**COMMUNITY FEDERAL SAVINGS AND LOAN ASSOCIATION OF OVERLAND, a Corporation, Appellant,**

v.

**GENERAL CASUALTY COMPANY OF AMERICA, a Corporation, Appellee.**

No. 16298.

United States Court of Appeals
Eighth Circuit.

Feb. 15, 1960.

---

Harry S. Gleick, St. Louis, Mo., made oral argument on behalf of appellant.

G. W. Marsalek, St. Louis, Mo., presented argument for the appellee.

Before SANBORN, VAN OOSTERHOUT and MATTHES, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is a suit by plaintiff, a corporation organized pursuant to act of Congress, engaged in the business of a savings and loan association in St. Louis County, Missouri, upon a Savings and Loan Blanket Bond issued by defendant.

Jurisdiction based upon diversity of citizenship and the requisite amount is established.

It is undisputed that the $200,000 bond sued upon was in force and effect at the time of plaintiff's loss. The bond afforded a number of coverages. The coverage involved in this suit is thus stated:

"Fraud.

"5. Any loss of Property through any other form of fraud or dishonesty by any person or persons, whether Employees or not."

In the body of the bond under the heading in large type reading: "The Foregoing Agreement Is Subject To The Following Conditions And Limitations:" it is stated:

"Section 1. This Bond Does Not Cover:

\* \* \* \* \* \*

"(c) Any loss the result of the complete or partial non-payment of or default upon any loan made by or obtained from the Insured, whether procured in good faith or through trick, artifice, fraud or dishonesty, except when covered by Insuring Clause 1 or 2."

It is conceded that insuring Clauses 1 and 2 are not here involved. The question for determination is whether under the facts of this case the exclusion clause is operative so as to preclude a recovery upon plaintiff's claim based upon fraud.

This litigation arises as a result of losses sustained by plaintiff in connection with three first mortgage loans made by plaintiff to H. M. G. Building Company, Inc., secured by deeds of trust upon described lots in South Twin Subdivision in St. Louis County, Missouri, upon each of which lots it had erected or was erecting a house.

The loans here involved are:

| Date: | Security: | Amount: |
|---|---|---|
| August 19, 1954 | 3 lots and houses | $ 45,000 |
| September 8, 1954 | 17 lots and houses | 297,500 |
| October 5, 1954 | 5 lots and houses | 87,500 |

In support of the August 19 and September 8 loans, the H. M. G. Building Company, Inc., furnished separate affidavits as to each lot offered as security to the effect that the building upon such lot was completed and that all bills for labor and material had been paid.

As to the October 5 loan, oral representations to the same effect were made and affidavits so stating were promised but never delivered.

It is stipulated that such affidavits and representations are false and that they were relied upon by plaintiff in making the loans.

It is clearly established that many of the houses on the lots described in the trust deeds were not completed at the time the loans were made and that many labor and material bills incurred in erecting such houses were unpaid.

Plaintiff advanced an additional $342,-279.92 to complete the houses and to settle and pay the mechanic's lien claims.

Plaintiff received out of the sale of the houses and other securities that it had obtained from the mortgagor a total of at least $629,829.92.

Plaintiff has established that it has suffered a substantial loss in these transactions, the exact amount of which is not here material.[1]

The trial court found that false affidavits were furnished and that false representations were made by the borrower and that a fraud had been committed which brought about plaintiff's loss, and that while plaintiff was not diligent in its investigation, fraudulent devices and practices were resorted to by the borrower, inducing plaintiff to make the loans and refrain from making inquiry. The parties came at least very close to stip-

[1]. The trial court, although it had no occasion to determine the amount of plaintiff's loss, states the amount thereof to be $88,831.86.

ulating the presence of all of the necessary elements of fraud. Inasmuch as we believe the exclusion issue to be decisive in this case, we shall assume for the purposes of this opinion that the trial court reached a permissible conclusion upon the fraud issue, and will forego setting out the facts pertaining to the fraud issue.

The court then found that while plaintiff's loss fell within coverage "5" pertaining to fraud, exclusion "1(c)" hereinabove set out barred recovery. In its declaration of law the court states:

"The Court therefore declares the law herein to be that under the facts and circumstances of this case, plaintiff's claim falls within the exclusion clause aforesaid as a loss resulting from non-payment and default upon a loan obtained from plaintiff.

"The Court further declares the law to be that said exclusion clause includes loans procured through trick, artifice, fraud and dishonesty.

"The Court further declares the law to be that the exclusion clause above referred to does not eliminate all of the coverages provided by the bond in question, and therefore cannot be considered as an exclusion which causes a complete failure of consideration.

"The Court declares the law to be that under the facts and circumstances of this case, the loss here incurred was as the result of a loan and that while fraud, deceit, trick and dishonesty were practiced in obtaining said loan, and while the bond in question provided coverage for losses through fraud and dishonesty, nevertheless, this is not a credit insurance obligation, and therefore the factual situation comes within the provisions of the exclusion clause aforesaid."

The parties treat the bond as a Missouri contract. Since we find nothing in the record to indicate that the law of some other state should control, we shall assume that Missouri law applies. See Fidelity Trust Company v. American Surety Company, 3 Cir., 268 F.2d 805, 807; Sulzbacher v. Travelers Ins. Co., 8 Cir., 137 F.2d 386, 390.

Plaintiff in its brief asserts that the exclusion clause will not operate to deprive plaintiff of the right of recovery under the insuring clause of the bond which protected plaintiff from loss of property through any form of fraud or dishonesty. Plaintiff concedes that it has found no cases squarely in point in Missouri or elsewhere to support this proposition. We also are unable to find any cases so holding. In such a situation, this Court accepts the considered views of the trial judge as to the applicable local law, unless convinced of error. See Homolla v. Gluck, 8 Cir., 248 F.2d 731, 733–734 and cases cited. Plaintiff urges that the reasoning of Provident Trust Co. v. National Surety Corporation, 3 Cir., 138 F.2d 252, supports its position. We do not agree. The court there found that there were two conflicting exclusions with relation to the forgery coverage and that by reason thereof the application of the exclusion relied upon by the defendant would render the other exclusion clause meaningless. The court found that a confusing situation was thereby presented as to which exclusion was intended to be operative.

Plaintiff also relies upon Fidelity & Casualty Company of New York v. Bank of Altenburg, 8 Cir., 216 F.2d 294, and Hartford Accident & Indemnity Co. v. Federal Deposit Ins. Corp., 8 Cir., 204 F.2d 933. The exclusion clause involved in each of the cases just cited is practically identical to that found in the present bond. Both of the cases arose in Missouri. No issue was apparently raised as to the validity of the exclusion clause or its inconsistency with the insuring clause. Both cases involved losses suffered by banks as a result of a depositor's check kiting activities. The court in each case held that no loan resulted from the check kiting operations and that hence the loan exclusion clause would not prevent recovery. The cases

afford plaintiff no support. They assume without discussion the validity of the loan exclusion clause.

 The courts of Missouri have strictly adhered to the rule that absent ambiguity there is no room for construction of contracts. Unless ambiguity exists, courts have no occasion to resort to rules of interpretation. Unequivocal language in written contracts must be given its plain meaning and enforced as written. State ex rel. Prudential Ins. Co. of America v. Bland, 353 Mo. 956, 185 S.W.2d 654, 656. State ex rel. National Life Ins. Co. v. Allen, 301 Mo. 631, 256 S.W. 737. This court in applying Missouri law has reached the same result. Andrews v. St. Louis Joint Stock Land Bank, 8 Cir., 107 F.2d 462, 467; National Surety Corporation v. McGreevy, 8 Cir., 64 F.2d 899. Such rules apply to insurance contracts. Forir v. Toman, Mo., 202 S.W.2d 32, 34. It is well established that:

"Contracts of insurance, like other contracts, must be construed according to the terms which the parties have used, to be taken and understood, in the absence of ambiguity, in their plain, ordinary, and popular sense."

Bergholm v. Peoria Life Ins. Co., 284 U.S. 489, 492, 52 S.Ct. 230, 231, 76 L.Ed. 416; Hartford Accident & Indemnity Co. v. Federal Deposit Ins. Corp., supra, 204 F.2d at page 937; State ex rel. Prudential Ins. Co. of America v. Shain, 344 Mo. 623, 627, 127 S.W.2d 675, 677.

In the case last cited the Missouri court expressly holds that the law as above stated applies to restrictive provisions of an insurance policy.

 Judged by the standards just discussed, we are satisfied that exclusion "1(c)" is not ambiguous. It specifically and clearly excludes from fraud coverage losses resulting from nonpayment of loans. The exclusion by its terms states that it applies to loans "whether procured in good faith or through trick, artifice, fraud or dishonesty." This construction of the proviso does not wholly eliminate and render meaningless the provisions of the bond extending fraud coverage. Plaintiff in its brief states:

"The trial court in its declaration of law pointed out that the obligation of the defendant was not one of credit insurance. We agree that this is so, and we suggest that the very purpose of the proviso in question is to eliminate the possibility of interpreting the bond as a policy of credit insurance."

Plaintiff then sets out a number of situations where, in its opinion, the exclusion proviso would bar recovery among them:

"5. Where the borrower makes fraudulent representations respecting his financial standing, either orally or by delivery of a false financial statement, in a case where the financial statement and the collectibility of the paper are related."

Thus, we are not confronted with a problem of determining which of two inconsistent provisions controls. As we read plaintiff's contention, it does not claim the proviso is inconsistent with the clause insuring against fraud, or invalid.

The plaintiff in its brief sets out a number of rules governing the construction and interpretation of ambiguous contracts. Most of said rules are well established, but they are not here applicable because we have determined that the bond is not ambiguous.

 We agree that an insurer relying upon an exception or proviso in an insurance policy has the burden of pleading and proving that no liability exists by reason of the exclusion provision. Hartford Accident & Indemnity Co. v. Shaw, 8 Cir., 273 F.2d 133. Defendant has fully met this burden.

 Plaintiff insists that its loss is not the result of a complete or partial nonpayment of or default in any loan made or obtained by it. Plaintiff argues that if the statements as to the completion of the buildings and the payment of

lien claims had been true, no loss would have been suffered; hence, the fraud was the cause of the loss. The same type of claim could doubtless be made in almost any type of loan induced by fraud. It is undisputed that loans were made which remain unpaid in part. While the loan was induced by fraud, it seems clear that the immediate cause of the loss was the nonpayment of the loans. It is entirely clear from the exclusion provision as written that the exclusion extends to losses on loans induced by fraud.

Plaintiff makes the further contention that since plaintiff collected more than the $430,000 aggregate of the loans from the sale of the property, no loss was suffered on the loans. It is perfectly obvious that plaintiff's additional advances of some $342,000 were made because of the loans and for the purpose of increasing the amount to be salvaged from the mortgaged property. When plaintiff took possession of the mortgaged property upon default, several choices were open to it. The property could be sold in its then incompleted condition subject to liens, or additional funds could be supplied to complete the houses and satisfy the liens. Both the mortgagor and the mortgagee agreed that the latter course, which was the course followed, would produce the greater salvage. The funds plaintiff had to advance to protect its security had to be recovered from the proceeds of sale. There is nothing to indicate that plaintiff made a gift of the funds it advanced to protect the security. In its statements and accounting introduced in evidence, these advances are treated as obligations of the borrower. Plaintiff's accounting statements show commingled charges against H. M. G. for the original loans and for the advances made to complete the buildings and pay off the mechanic's liens. The credits received from the sale of the mortgaged property and the additional securities furnished by the borrower are all credited against the aggregate debt of the borrower, leaving the balance claimed to be due on the aggregate indebtedness of H. M. G. to the plaintiff. The evidence does not satisfactorily establish that the plaintiff applied any payment received to any particular segment of H. M. G.'s indebtedness to it. In submitting plaintiff's statement of H. M. G.'s indebtedness, Charles F. Dillon, Executive Vice President of plaintiff, states in his letter of transmittal:

"Pursuant to your instructions I have prepared a summary of loss in connection with loans made by Community Federal Savings and Loan Association of Overland and the H. B. Surkamp Company to the H-M-G Building Company, Inc.

"I hereby certify that the enclosed report was prepared from the books and records of the Community Federal Savings and Loan Association of Overland as of the date indicated and to the best of my knowledge is true and correct."

The court reached a permissible conclusion in determining the loss was due to a partial nonpayment of or default upon a loan made or obtained from plaintiff by H. M. G. Such conclusion could be justified upon the premise that the advances were part of the loans made, or upon the basis that the evidence does not compel the finding that the credits received were actually applied in such a way as to result in the full payment of the original mortgage notes.

Plaintiff makes some contention that the words "blanket bond" indicate that the coverage of the bond is to be broad. The bond actually did provide coverage against many hazards. However, for reasons heretofore stated, the coverage of the bond is to be determined by its terms. The bond is on a standard form worked out jointly by the United States Savings and Loan League and the insurers. The exclusion provisions of the bond appear on the face of the bond and are set out as prominently as the coverage is. No deception is charged with reference to the exclusion provision.

In determining that the plaintiff's loss sued upon was the result of the nonpay-

ment of the loans it had made, and that its claim was, under applicable Missouri law, barred by reason of the provisions of exclusion "1(c)" of the bond in suit, the trial court reached a permissible conclusion.

The judgment is affirmed.