## DEPOSITORS TRUST COMPANY
### vs.
## MARYLAND CASUALTY COMPANY

Kennebec.   Opinion, October 17, 1961.

*Irving Isaacson*, for plaintiff.

*Mahoney, Desmond and Mahoney*, for defendant.

*John E. Campbell*, on brief.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

TAPLEY, J.  On appeal.  The plaintiff appeals from an order of the justice below granting defendant's motion for

summary judgment. Action was brought by the plaintiff, Depositors Trust Company, against defendant, Maryland Casualty Company, to recover the sum of $57,505.72, which amount is claimed to be due and payable under the provisions of a certain "Bankers' Blanket Bond" issued by the defendant to the plaintiff.

Defendant filed a motion for summary judgment under provisions of Rule 56 (b) and (c) of Maine Rules of Civil Procedure.

> "- - - on the ground that the Pleadings, the Plaintiff's Answer to Defendant's Interrogatories and the Plaintiff's Pretrial Conference Statement of Facts show that the Defendant is entitled to judgment as a matter of law."

> "Where facts asserted are such that if established, there could be no recovery; or where undisputed facts are such as would preclude plaintiff's recovery then the question becomes, one of law for determination of the court and a proper matter for disposition by summary judgement." *Greyhound Corp. v. Excess Insurance Co. of America,* 233 F. (2nd) 630.

> "- - - - a summary judgment should only be given when it is quite clear what the truth is. - - - One who moves for summary judgment has the burden of demonstrating clearly that there is no genuine issue of fact, and any doubt as to the existence of such an issue is resolved against him." *Heyward, et al. v. Public Housing Administration, et al.,* 238 F. (2nd) 689, at page 696.

See Vol. 3, Page 119, Sec. 1234, Federal Practice and Procedure (Barron and Holtzoff).

The pleadings, plaintiff's answers to defendant's interrogatories, and the pretrial conference statement of facts, provide the factual basis upon which the motion for summary judgment is to be determined.

The facts are summarized as follows: The plaintiff and defendant entered into a contractual relationship through the medium of a "Bankers' Blanket Bond" bearing designation #90-454449, wherein the Maryland Casualty Company agreed to indemnify Depositors Trust Company against any losses sustained by it up to an amount not exceeding $550,000.00, under such conditions as are described in said bond. On March 13, 1956 the plaintiff entered into business relations with Vincent Fiore, d/b/a Fiore Cadillac-Olds Company of Augusta, Maine, wherein it agreed to engage in the wholesale financing of the purchase of new and used automobiles to be sold at retail by Fiore. The purchase of new cars was financed through the medium of trust receipts. Before commencing financing, the plaintiff filed a statement of trust receipt financing in accordance with the provisions of the Uniform Trust Receipts Act (Ch. 461, P. L., 1955).

The financing procedure between the plaintiff and Fiore was in the following manner: New Cadillacs, Fiats and Jaguar cars were invoiced by the distributors to Fiore. The invoices, prior to delivery of the vehicles, were sent, with sight drafts attached, to the plaintiff. The plaintiff, under a power of attorney from Fiore, executed trust receipts, together with a note in the amount of the invoice, paying the amount of the invoice in accordance with the sight draft. Oldsmobile cars were invoiced by the factory directly to the plaintiff, with sight drafts attached, and the plaintiff followed the same procedure in regard to payment of the sight drafts, execution of trust receipts, and delivery of the vehicles to Fiore for sale. Used cars taken in trade by Fiore, or those which Fiore desired to purchase, were mortgaged to the plaintiff under chattel mortgages. Plaintiff authorized Fiore to sell the vehicles in the regular course of his business, with the agreement that he was to remit the proceeds of the sales, both those under trust receipts and chattel mortgages, within 24 hours after the sale of the ve-

hicles, proceeds to be applied against amounts due from Fiore to the plaintiff.

On September 24, 1958 an inventory check was made of Fiore's vehicles resulting in disclosing the fact that 14 automobiles to which the plaintiff had title had been sold by Fiore and he had failed to pay the proceeds of the sales to the plaintiff, having converted such proceeds to his own use. The amount of these proceeds was $52,399.81. Following the discovery of the conversion, the plaintiff entered into an agreement with Fiore for the payment of these funds by providing weekly payments of $500.00 and additional payments from the sales of Cadillac, Oldsmobile and foreign car sales. These payments were to be in addition to any other payments due from Fiore. Under this agreement approximately $16,000.00 was repaid by Fiore to the plaintiff. The plaintiff continued financing the purchase of automobiles by Fiore with the hope of mitigating its loss. The plaintiff in its answers to interrogatories reports further conversions by Fiore in 1959 wherein it was discovered that Fiore had sold 11 vehicles, the titles of which were in the plaintiff and, as before, he failed to pay the plaintiff the proceeds of such sales. This default amounted to $21,752.23.

The plaintiff bases its right of recovery on Coverage Clause (B) of the bond which is couched in the following language:

> "Any loss of Property through robbery, burglary, common-law or statutory larceny, theft, false pretenses, hold-up, misplacement, mysterious unexplainable disappearance, damage thereto or destruction thereof, whether effected with or without violence or with or without negligence on the part of any of the Employees, and any loss of subscription, conversion, redemption or deposit privileges through the misplacement or loss of Property, while the Property is (or is supposed to be) lodged or deposited within any offices or premises

located anywhere, except in an office hereinafter excluded or in the mail or with a carrier for hire, other than an armored motor vehicle company, for the purpose of transportation."

The defendant takes the position of no liability because it says that the facts of the case, as developed by the pleadings, interrogatories and pretrial conference statement of facts, put the transactions between the plaintiff and Fiore within the category of a loan and, therefore, come within the Exclusion Clause, Sec. 1 (d) of the bond. This Exclusion Clause reads:

"Any loss the result of the complete or partial non-payment of or default upon any loan made by or obtained from the Insured, whether procured in good faith or through trick, artifice, fraud or false pretenses, except when covered by Insuring Clause (A), (D) or (E)."

We first give our attention to the construction of the Exclusion Clause in light of the undisputed facts. The primary reason for the creation of the relationship between the Depositors Trust Company and Vincent Fiore was the borrowing and lending of money for the particular purpose of operating the business of buying and selling automobiles. The type of security for the loans required by the Depositors Trust Company was in the nature of trust receipts and chattel mortgages. Notes formed a part of the trust receipts and chattel mortgage transactions.

Trust receipts are a method of financing and supply a procedure whereby the lender acquires security from the borrower in order to safeguard his loan. In other words, the loan is the prime consideration between the parties and the trust receipt is incidental thereto. The Uniform Trust Receipts Act defines the words "entruster" and "security interest" as follows:

" 'Entruster' means the person who has or directly or by agent takes *a security interest in*

*goods, documents or instruments under a trust receipt transaction,* and any successor in interest of such person. A person in the business of selling goods or instruments for profit, who at the outset of the transaction has, as against the buyer, general property in such goods or instruments, and who sells the same to the buyer on credit, retaining title or other security interest under a purchase money mortgage or conditional sales contract or otherwise, is excluded." (Emphasis supplied.)

" 'Security interest' means a property interest in goods, documents or instruments, *limited in extent to securing performance of some obligation of the trustee* or of some third person to the entruster, and includes the interest of a pledgee, and title, whether or not expressed to be absolute, whenever such title is in substance taken or retained for security only." (Emphasis supplied.)

The University of Chicago Law Review, Vol. 3, on page 26, contains an Article by George Gleason Bogert entitled, "The Effect of the Trust Receipts Act." Some quotations from the Article follow:

"B. PARTIES TO TRUST RECEIPT MUST BE LENDER AND BORROWER

The two necessary parties to the trust receipt transaction (called in the act 'entruster' and 'trustee') must occupy the relation of lender and borrower toward each other. The word 'trustee' is used in the act in an artificial sense, and does not connote a true equity trustee. The trust receipt does not involve a strict trust or other fiduciary relation."

- - -

"E. REQUIREMENTS AS TO PURPOSE FOR WHICH POSSESSION IS RETAINED OR OBTAINED BY BORROWER

Not only must the lender and borrower be of a particular type, and not only must the lender permit the borrower to retain or get possession, but

that possession must be kept or obtained for one or more of a limited number of purposes, if the transaction is to be a trust receipt transaction under the act. The purpose must be one of the following:

(1) In order to enable the borrower to sell or exchange goods, documents or instruments entrusted.

- - -

(2) In order to enable the borrower to process or handle the goods entrusted, or the goods represented by the document entrusted, preparatory to sale by the borrower.

- - -

(3) In order that instruments delivered to, or retained by, the borrower may be (a) delivered to a principal of the borrower; or (b) delivered to a depositary or registrar; or (c) used for presentation, collection or renewal."

On page 38 the writer of the article summarizes the effect of the act and, as to that portion of his summary which is pertinent here, he states:

"F. In general the theory of the act is to give to the bank, finance company, or other lender every conceivable protection in handling trust receipt and pledge transactions, so that the use of these security devices may be increased and the financing of sales and other transactions facilitated."

In considering the purposes of the Uniform Trust Receipts Act, the court, in *Barrett, Trustee* v. *The Bank of the Manhattan Company,* 218 F. (2nd) 763, on page 765, stated:

"It was devised to promote greater ease in the financing of purchases by buyers who had no available funds for immediate payment and must borrow the price until they could sell the goods; - - -."

> "A transaction wherein one party transfers to the other a sum of money which that other agrees to repay absolutely is a 'loan' without regard to its form, if such was the intent of the parties. Yecek vs Delaware, L. & W. R. Co., 28 N. Y. S. 2d, 35, 36; 176 Misc. 553." Words & Phrases, Vol. 25 A., page 80.

See also *National Bank of Paulding* v. *Fidelity & Casualty Co.*, 131 F. Supp. 121.

It has been held that trust receipts are "a method of securing a debt and not of creating a debt." *Commercial Discount Co.* v. *County of Los Angeles*, 105 P. (2nd) 115.

The law is too well settled to require citations to the effect that construction of insurance contracts containing ambiguities are to be construed more strongly against the insurer. The Exclusion Clause (d) in the blanket bond is plain and unambiguous so no problems of construction are concerned. See *Community Federal Savings & Loan Association of Overland* v. *General Casualty Company of America*, 274 F. (2nd) 620. This case involves fraud practiced upon the lender by the borrower to obtain loans. The bond involved contained an exclusion clause nearly identical with the one concerned in the present litigation. The court said on page 624:

> "Plaintiff insists that its loss is not the result of a complete or partial nonpayment of or default in any loan made or obtained by it. Plaintiff argues that if the statements as to the completion of the buildings and the payment of lien claims had been true, no loss would have been suffered; hence, the fraud was the cause of the loss. The same type of claim could doubtless be made in almost any type of loan induced by fraud. It is undisputed that loans were made which remain unpaid in part. While the loan was induced by fraud, it seems clear that the immediate cause of the loss was the nonpayment of the loans. It is

entirely clear from the exclusion provision as written that the exclusion extends to losses on loans induced by fraud."

Counsel for plaintiff bases its right of recovery on the premise that Fiore committed larceny by converting the proceeds of the sales to his own use, which act occasioned the loss to the bank. He takes the position that the proximate cause of the loss is the alleged larceny, and looks to the bond to recover the loss under Coverage Clause B. The Exclusion Clause (d) excludes liability for any loss occasioned by a complete or partial nonpayment or default of the loan. It states in unequivocal and plain language that if there is *any loss* suffered as a result of nonpayment or default of any loan made by or obtained from the bank it will not be liable. We are satisfied that the relationship between the plaintiff and Fiore was one of lender and borrower.

The loan is the basis of the relationship between the plaintiff and Fiore. Without it there would be no trust receipts or chattel mortgages. Exclusion Clause (d) excepts from its operation Insuring Clauses A, D and E, so it appears that the defendant agrees that it is liable to pay any losses or defaults of loans covered by conditions expressed under A, D, or E. It is significant to note that "B" is not included as an exception to the Exclusion Clause. Plaintiff's case is based not on loan defaults but larceny of proceeds from the sales of vehicles under conditions requiring immediate payment of proceeds to the plaintiff. Counsel for the plaintiff in his brief states: "The losses in question arise out of larceny of the bank's property, and not as a result of a nonpayment of a loan." He fails to consider the fact that the entire chain of circumstances is predicated upon a loan. If it were not for a loan there would be no loss.

The pretrial statement of facts states:

"Fiore was authorized by the Plaintiff to sell the vehicles in question in the course of his business,

*but he agreed with the Plaintiff to remit the proceeds of sales of all vehicles, both under trust receipts and chattel mortgages, within twenty-four (24) hours after the sale of each vehicle, to be applied against amounts due from him to the Plaintiff.*" (Emphasis supplied.)

Fiore, with the consent of the plaintiff, sold the vehicles, agreeing to remit the proceeds of the sales to the plaintiff. Thus the purchasers received good titles to the vehicles free of encumbrances but the loan *obligations* on the part of Fiore to the plaintiff remained.

"A. SALES BY TRUSTEE IN THE ORDINARY COURSE OF TRADE.

1. Where the trustee, under the trust receipt transaction, has liberty of sale and sells to a buyer in the ordinary course of trade, whether before or after the expiration of the 30 day period specified in subsection I of section 8, and whether or not filing has taken place, such buyer takes free of the entruster's security interest in the goods so sold, and no filing shall constitute notice of the entruster's security interest to such a buyer.

"2. No limitation placed by the entruster on the liberty of sale granted to the trustee shall affect a buyer in the ordinary course of trade, unless the limitation is actually known to the latter."

Sec. 9, II of the Uniform Trust Receipts Act.

We conclude, and so determine, that the facts of this case place it within the purview of Exclusion Clause (d), Section 1 of the bond.

The presiding justice was not in error in granting defendant's motion for summary judgment.

*Appeal denied.*