The FIRST NATIONAL BANK OF MEMPHIS, Plaintiff-Appellant,

v.

The AETNA CASUALTY AND SURETY COMPANY, Defendant-Appellee.

No. 14772.

United States Court of Appeals
Sixth Circuit.
Nov. 19, 1962.

A. Longstreet Heiskell (A. Longstreet Heiskell, Frierson M. Graves, Jr., Shepherd, Heiskell, Williams, Wall, & Kirsch), Memphis, Tenn., on the brief, for appellant.

Cooper Turner, Jr., Memphis, Tenn., and Elmer W. Beasley, Hartford, Conn., Cooper Turner, Jr., Memphis, Tenn., Elmer W. Beasley, Hartford, Conn., on the brief, Canada, Russell & Turner, Memphis, Tenn., of counsel, for appellee.

Before CECIL, Chief Judge, WEICK, Circuit Judge, and PECK, District Judge.

WEICK, Circuit Judge.

The First National Bank of Memphis sued The Aetna Casualty and Surety Company in the District Court on a "Bankers Blanket Bond" to recover moneys which it paid in settlement of litigation with the trustee in bankruptcy of Butler-Foster Milling Company over an alleged voidable preference claimed by the trustee to have been received by the Bank.

The litigation with the trustee in bankruptcy arose out of loans made by the Bank to Butler-Foster Milling Company of Memphis, Tennessee totaling nearly $3,000,000 which were secured by negotiable warehouse receipts issued by Alabama Grain Elevator Company, Inc. of Mobile, Alabama certifying that soya beans belonging to Butler-Foster were in its possession. Landon V. Butler was the controlling shareholder, president and director of Butler-Foster and the elevator company. Butler-Foster paid $300,000 to the Bank on February 18, 1955 to apply on the loans reducing its debt to the Bank to $2,699,491.00 which was secured by twenty-six warehouse receipts issued by the elevator company calling for

1,367,739 bushels of soya beans. On March 1, 1955 Butler–Foster paid to the Bank the balance of the loans in full from the proceeds of sale of 1,299,839 bushels of soya beans described in warehouse receipts which it sold to Continental Grain Co.

Shortly thereafter Continental discovered that there were no soya beans in the warehouse to support the warehouse receipts and that they were worthless. Bankruptcy of Butler-Foster followed. Continental then sued the Bank and the trustee in bankruptcy in the District Court to rescind the purchase of the warehouse receipts and to recover the amount which it paid therefor claiming that the Bank received the money as a resulting trustee. The trustee in bankruptcy filed a cross-claim against the Bank to recover $2,699,491.00 on the theory that the payment of the Bank's loans constituted a preference voidable under the Bankruptcy Act. The trustee also filed a separate suit against the Bank to recover the payment made by Butler-Foster to the Bank on February 18, 1955 in the amount of $300,000.

The Continental lawsuit was decided by the court in favor of the Bank on the ground that Continental had elected to affirm the sale and therefore could not rescind it. The court further held that the Bank had acted in good faith without knowledge of the fact that the warehouse receipts were unsupported by the beans. Continental Grain Company v. First National Bank of Memphis, D.C., 162 F. Supp. 814. An appeal was prosecuted to this Court by Continental. The cross-claim of the trustee against the Bank was reserved for later determination.

While the appeal was pending the Bank effected a settlement of the litigation with the trustee in bankruptcy for $650,000 of which $150,000 was paid to Continental as consideration for the dismissal of its appeal. The trustee retained $500,000 as consideration for the dismissal of his actions against the Bank. The Bank paid out $190,000 for attorneys fees and $13,-859.95 for miscellaneous expenses. As part of the consideration for the settlement the Bank waived the filing of any claim against the estate of Butler-Foster in bankruptcy.

The facts were stipulated in the District Court and were adopted as findings of fact by the court. The court adopted conclusions of law which were to the effect that the payments made by the Bank were wholly voluntary and not covered by the bond. The court dismissed the complaint and the Bank appealed to this Court.

The Bank claimed that its loss was covered by Insuring Clause (B) of the bond which is set forth in footnote [1]. We would have no difficulty in holding that the conduct of Butler-Foster amounted to obtaining money by false pretenses within the meaning of this clause. The real issue in the case, however, is whether coverage for the loss was excluded by Section 1(d) of the Exclusions which specifically provided that the bond does not cover:

"(d) Any loss, the result of the complete or partial nonpayment of or default upon any loan made by or obtained from the Insured, whether procured in good faith or through trick, artifice, fraud or false pretenses, except when covered by Insuring Clause (A), (D) or (E)."

It will be noted that Insuring Clause (B) was not excepted from the Exclusion Clause 1(d).

[1]. (B) Any loss of Property through robbery, burglary, common-law or statutory larceny, theft, false pretenses, hold-up, misplacement, mysterious unexplainable disappearance, damage thereto or destruction thereof, whether effected with or without violence or with or without negligence on the part of any of the Employees, and any loss of subscription, conversion, redemption or deposit privileges through the misplacement or loss of Property, while the Property is (or is supposed to be) lodged or deposited within any offices or premises located anywhere, except in an office hereinafter excluded or in the mail or with a carrier for hire, other than an armored motor vehicle company, for the purpose of transportation.

The District Court was of the view that the Bank's loss resulted from the nonpayment of loans made by it to Butler-Foster and hence came within the plain language of the Exclusion 1(d).

If Continental had been successful in its action in the District Court against the Bank and the trustee in bankruptcy for rescission, the Bank would have been compelled to return to Continental the payment made on March 1, 1955 by Butler-Foster on its loans in the amount of $2,699,491.00. The parties would have been restored to their previous status. The Bank would then have its notes secured by warehouse receipts which were worthless. It would have a claim against the bankrupt's estate and share as a general creditor. It is conceded that had such situation existed Exclusion 1(d) would have prevented recovery against Aetna under Insuring Clause (B) of the bond. Community Federal Savings and Loan Association of Overland v. General Casualty Co., 274 F.2d 620 (C.A. 8).

■ It is argued, however, that since the notes were paid, Section 1(d) of the exclusions was no longer applicable. In our judgment, if no valid claim existed against Aetna at the time the loans were made and the worthless warehouse receipts were deposited as collateral with the Bank, the subsequent payment of the notes resulting in the suit by the trustee to set aside a voidable preference created no liability where none theretofore existed. It was not intended by the bond to provide credit insurance for the Bank or coverage against preferences.

■ The District Court found that, in making the settlement with Continental and the trustee in bankruptcy, the Bank was motivated by considerations other than legal liability such as attorneys fees, costs and expenses and the time taken by its officers and employees in the preparation for and the defense of the trustee's lawsuits. While these considerations undoubtedly presented real problems to the Bank, they cannot be made the basis for imposing liability on Aetna for the sums paid out in settlement. Indemnity under the bond was afforded only for payments imposed by legal liability.

■ Finally, it is claimed that coverage was afforded under Insuring Clauses (D) and (E). In our opinion, the warehouse receipts were not forged or counterfeited. They were signed and issued by the elevator company and endorsed by Butler-Foster, all by duly authorized officers. Falsity lies in the representation of facts contained in the warehouse certificates and not in the genuineness of their execution. In common parlance, the warehouse certificates would not be considered as forged or counterfeited and certainly not at common law or under the statutes of Alabama or Tennessee. Gilbert v. United States, 370 U.S. 650, 82 S.Ct. 1399, 8 L.Ed.2d 750; Marteney v. United States, 216 F.2d 760 (C.A. 10); First National Bank of South Carolina of Columbia v. Glens Falls Insurance Company, 304 F.2d 866 (C.A. 4); State Bank of Poplar Bluff v. Maryland Casualty Company, 289 F.2d 544 (C.A. 8); United States Fidelity & Guaranty Co. v. First National Bank of Ft. Morgan (Colo. 1961), 364 P.2d 202; Mallory v. State, 179 Tenn. 617, 168 S.W.2d 787; Harris v. State, 19 Ala.App. 484, 98 So. 316; Williams v. State, 33 Ala.App. 119, 31 So.2d 590.

Since the loss was not covered by the bond, there was no liability for attorneys fees, costs and expenses.

We think that the conclusions of law adopted by the District Court were correct and its judgment is affirmed.