William B. Lawless, J.
The plaintiff bank, as insured under a bankers’ blanket bond, and the defendant insurance company have submitted a controversy upon an agreed statement of facts pursuant to CPLR 3222.
On December 3, 1962 plaintiff lent C. Elias & Sons, Inc., hereafter referred to as the borrower, a sum of money in reliance upon the assignment of accounts receivable which the borrower represented to be valid accounts. On February 14, 1963 the plaintiff bank lent the same borrower an additional sum of money relying for security on the previously assigned accounts receivable.
Subsequently, the plaintiff learned that many of these accounts were in fact spurious, in some cases goods having been ordered *342 and not delivered and -in other cases no goods ever having been ordered or received by the purported debtors shown on the assigned accounts. Also, the submission of the parties state that the actual amount of the valid accounts assigned was slightly overstated.
The borrower did repay to the plaintiff a part of a loan but prior to the payment in full, the borrower was adjudged a bankrupt and the parties agree that the plaintiff cannot reasonably expect to recover any further payments on the notes from the borrower. The undisputed amount still unpaid is $15,062.55.
Prior to and during the sequence of events summarized here and recited more fully in the submission, the defendant (or its predecessor, the Massachusetts Bonding and Insurance Company) issued and continued in effect a “ Bankers Blanket Bond, Standard Form 24 ” covering the plaintiff against certain losses up to a stated amount substantially in excess of the amount sought by the plaintiff in this action.
The sole question for decision is whether on these facts plaintiff is entitled to judgment against the defendant in the sum of $15,062.55, with imerest thereon from the date of the first demand made by the plaintiff upon the defendant.
Critical to decision of this question is the construction of paragraph (E) of the bond, which reads, in pertinent part, as follows:
“ The losses covered by this bond are as follows:
SECURITIES
“ (E) Any loss through the Insured’s having, in good faith and in the course of business, whether for its own account or for the account of others, in any representative, fiduciary, agency or any other capacity, either gratuitously or otherwise, purchased or otherwise acquired, accepted or received, or sold or delivered, or given any value, extended any credit or assumed any liability, on the faith of, or otherwise acted upon any securities, documents or other written instruments which prove to have teen counterfeited or forged as to the signature of any maker, drawer, issuer, endorser, assignor, lessee, transfer agent or registrar, acceptor, surety or guarantor or as to the signature of any person signing in any other capacity, or raised or otherwise altered” (emphasis added).
Plaintiff takes the position that this language of the bond covers the losses here sustained since:
1. The names of the debtors printed or typed by the borrower on the fictitious invoices were the equivalent of signatures of the debtors and, as such, were ‘ ‘ counterfeit or forged as to the signature of any person signing in any other capacity ”,
*343 2. The true test of coverage or lack of it must be based on what the reasonable expectation of the ordinary businessman would be, inferring, in this argument, that the construction of ambiguities should be resolved against the insurance company drafting the language and having, in the past and now, the power to alter the language in paragraph (E) which has been the subject of conflicting judicial interpretations.
The defendant argues that since there was no forgery of any signature, any fraud or falsity lies in the contents of the papers and paragraph (E) of the bond does not cover such a loss; they rely upon the Exchange Nat. Bank of Olean v. Insurance Co. of North America (341 F. 2d 673) in support of its position.
Plaintiff relies upon the holding in Prudential Capital Corp. v. Royal Ind. Co. (21 A D 2d 664) wherein the relevant facts are strikingly similar to the facts in this case, including the existence of a blanket bond containing language identical to tha+ contained in paragraph (E) of the blanket bond in existence in this ease, although it did not contain the exclusion clause (1) (D) which is present in the bond in the suit before us. The Appellate Division, First Department, noting that there are conflicting interpretations of the language appearing in paragraph (E) in the Federal courts (Fidelity Trust Co. v. American Sur. Co. of N. Y., 174 F. Supp. 630, affd. 268 F. 2d 805; First Nat. Bank of S. C. v. Glens Falls Ins. Co., 304 F. 2d 866) decided that the losses incurred through reliance on entirely spurious documents are covered by such language even though no forged signature is involved. The court based its decision primarily on the application of the test of what the reasonable expectation of the ordinary businessman would be, citing Harris v. Allstate Ins. Co. (309 N. Y. 72, 75) and Bird v. St. Paul Fire & Mar. Ins. Co. (224 N. Y. 47, 51).
We concur with the decision of the United States ¡Court of Appeals in Exchange Nat. Bank of Olean v. Insurance Co. of North America (supra). Therein, the bank sought indemnification for a defaulted loan where the president of the concern executed a promissory note and secured it by the assignment of accounts receivable. Later, it was found that many of the accounts receivable were nonexistent. There, as in the case before us, it was admitted that the documents were not “forged”. It was, however, contended, as it is in the case before us, that the documents were “counterfeit” within the meaning of the insuring clause (E). The Court of Appeals rejected that contention.
We agree that a document or writing is “ counterfeit ” if it is an imitation, if it is an attempt to simulate another document *344 or writing which is authentic. However, the alleged accounts receivable in this ease arose, not from an act to imitate or simulate authentic invoices but from a false representation of fact, to wit: that certain goods had already been shipped to a customer, for which funds were due and owing. It seems to us that the facts show a loss resulting from a default on a loan where the loan was procured through trick, artifice, fraud, or false pretenses, all of which are expressly excluded from coverage under section 1 of paragraph (d) of the exclusions (E) of the bond. See, also, the reasoning of the court in Johnstown Bank v. American Sur. Co. of N. Y. (6 A D 2d 4 [3d Dept.], mot. for lv. to app. den. 5 N Y 2d 705), where false conditional sales contracts were held not to be loans and therefore not excluded.
We have carefully considered the holding in Prudential Capital Corp. v. Royal Ind. Co. (21 A D 2d 664 [1st Dept., 1964]) but we believe the reasoning in the United States Court of Appeals decision in Exchange Nat. Bank as well as the decision in Johnstown Bank (supra), is more convincing in the circumstances of the case before us. It is one thing to hold a bonding agent for a ‘ ‘ counterfeit ” or “ forged ’ ’ document, but it is quite another to hold it liable under the language of this policy where the accounts receivable were from the outset virtually nonexistent and where the bank could have revealed that fact.
Enter judgment in favor of the defendant against the plaintiff dismissing the complaint on the merits, together with the costs of this action.