**EAST GADSDEN BANK, a Corporation, Plaintiff-Appellant,**

*v.*

**UNITED STATES FIDELITY AND GUARANTY COMPANY, a Corporation, Defendant-Appellee.**

No. 27218

Summary Calendar.

United States Court of Appeals Fifth Circuit.

Aug. 19, 1969.

**358**

George C. Hawkins, Gadsden, Ala., T. J. Carnes, Albertville, Ala., for plaintiff-appellant.

Ralph B. Tate, Ollie L. Blan Jr., Birmingham, Ala., for defendant-appellee.

Before JOHN R. BROWN, Chief Judge, and THORNBERRY and MORGAN, Circuit Judges.

JOHN R. BROWN, Chief Judge:

The Bank, East Gadsden Bank, brought suit against the Insurer, United States Fidelity & Guaranty Co., on a "banker's blanket bond," claiming that Bank had suffered a loss within the coverage of Insurer's bond.[1] Insurer, on the other hand, contended that the loss sustained was not within the coverage of the provision relied upon and, further, that, in any event, the loss was specifically excluded by the loan-exclusion provision in the bond.[2]

■ All the evidence presented on motion for summary judgment came from Bank's employees, and the facts were not disputed. The Trial Judge granted Insurer's motion for summary judgment, holding not only that the loss was not covered by the insuring agreement but also that it was specifically excluded by the loan exclusion. Since we agree[3] with the District Judge that the loan exclusion is applicable and controlling, we affirm the judgment for the Insurer.[4]

---

1. The Bank relied upon the provision in the bond covering losses by robbery, burglary, larceny, mysterious disappearance, and the like, which stated in part:

   "THE LOSSES COVERED BY THIS BOND ARE AS FOLLOWS:
   * * * Any loss of Property through robbery, burglary, common-law or statutory larceny, theft, false pretenses, hold-up, misplacement, mysterious unexplainable disappearance, damage thereto or destruction thereof, whether effected with or without violence or with or without negligence on the part of any of the Employees * * *."

2. The loan exclusion provided:
   "THIS BOND DOES NOT COVER:
   * * * Any loss the result of the complete or partial non-payment of or default upon any loan made by or obtained from the insured, whether procured in good faith or through trick,

   artifice, fraud or false pretenses, except when covered by Insuring Clause (A), (D) or (E)."

   Significantly, Clause B (the "larceny" provision) is not excepted from the effect of the loan exclusion. See note 4, *infra*.

3. Pursuant to new Rule 18 of the rules of this Court, we have concluded on the merits that this case is of such character as not to justify oral argument and have directed the clerk to place the case on the Summary Calendar and to notify the parties in writing. See Murphy v. Houma Well Service, 5 Cir., 1969, 409 F.2d 804 (Part I).

4. As there is no question of a conflict between the coverage clause and the exclusion that would render the coverage clause superfluous, it is unnecessary for us to consider the question whether the loss falls within the "larceny" coverage pro-

This litigation arose out of the Bank's dealings with Thomas L. Smith, Sr., a subcontractor who did business under the name Three "S" Plumbing & Heating Company. Smith maintained a checking account with the Bank in the name of the business. For some time prior to the incidents involved here, Smith had periodically borrowed money from the Bank, assigning work orders or contracts as collateral for the loans. Under these arrangements the prime contractor would then make the payments due Smith by a check payable to Smith and the Bank jointly. The Bank and Smith had agreed that he would bring these checks to the Bank, endorse them, and the proceeds would be applied to Smith's indebtedness to the Bank.

In late 1965 and early 1966 Smith entered into certain subcontracting agreements. Following the usual course of his dealings with the Bank, Smith borrowed substantial sums of money, assigning the subcontracts as collateral. At this point, however, the economic machinery went awry, for at some time during the performance of the contracts Smith ceased bringing the checks to the loan department to be applied to his loan. Rather, during the period from November 1965 to February 1967, over twenty contract payments were deposited by Smith in his regular checking account. Smith also made periodic withdrawals from this account, and by the time the Bank realized what had happened, the account was depleted and the Bank had lost a substantial sum of money.[5]

The Bank contends that Smith's unauthorized deposit of the contract monies to his own account coupled with his withdrawals of those funds caused the loss to fall within the "larceny" provision of the Bond. (See note 1, *supra*). Even assuming, however, that the loss falls within the coverage of the "lar-

ceny" provision (see note 4, *supra*), we cannot under these circumstances, agree with the Bank's contention that the loan exclusion is not controlling.

It is plain that the Insurer here did not purport to provide a policy of credit insurance. And, like the District Court, we think that the real cause of the loss here was Smith's failure to repay the loans. The case of Community Fed. Sav. & Loan Ass'n v. General Cas. Co., 8 Cir., 1960, 274 F.2d 620, is instructive. In that case the plaintiff association made certain mortgage loans, relying upon the false representations of the borrower. The deal soured, and the loan association then sued the insurer, claiming that the loss was in the provision of their contract covering losses sustained by fraud or dishonesty of any person. That contract also contained a loan exclusion virtually identical to the one involved here, and the Eighth Circuit held the exclusion to be controlling:

"Plaintiff insists that its loss is not the result of a complete or partial nonpayment of or default in any loan made or obtained by it. Plaintiff argues that if the statements as to the completion of the buildings and the payment of lien claims had been true, no loss would have been suffered; hence, the fraud was the cause of the loss. The same type of claim could doubtless be made in almost any type of loan induced by fraud. It is undisputed that loans were made which remain unpaid in part. While the loan was induced by fraud, it seems clear that the immediate cause of the loss was the nonpayment of the loans. It is entirely clear from the exclusion provision as written that the exclusion extends to losses on loans induced by fraud."

274 F.2d at 624–625.

---

vision of the policy. We may, without deciding, assume that it does. The "larceny" provision is not, however, excepted from the effect of the loan exclusion. See note 2, *supra*. See also First Nat'l Bank of Memphis v. Aetna Cas. & Sur. Co., 6 Cir., 1962, 309 F.2d 702.

5. The Bank then sued Smith on the notes and obtained judgment against him, but these judgments are apparently unsatisfied.

We recognize that there is one arguably significant difference between *Community Savings* and the case before us. There the fraud occurred in the inducement of the loan, while in this case the fraudulent practice occurred in its repayment. Nevertheless, in each case the basic transaction was a loan, which was made because the lender deemed the borrower a good credit risk. But both borrowers turned out to be poor credit risks —one because he made misrepresentations to get the loan, the other because he was dishonest in repaying it. Thus it is uncontradicted that in each case "loans were made which remain unpaid in part," and these defaults seem to us to be the "immediate cause" of the losses. The fact that in this case the fraud occurred at a later stage in the economic process may add some degree of appeal to the Bank's laments that it was done in, but legally it does not change the real nature of the Bank's problem—a good loan that became bad.

Affirmed.