**MARYLAND CASUALTY COMPANY,**
Plaintiff-Appellant,

v.

**STATE BANK & TRUST COMPANY,**
Defendant-Appellee.

No. 28464.

United States Court of Appeals,
Fifth Circuit.

May 6, 1970.

Rehearing Denied June 5, 1970.

Will G. Barber, Austin, Tex., for plaintiff-appellant.

James P. Hart, Austin, Tex., Tom G. Oliver, Jr., Ernest Morgan, San Marcos, Tex., for defendant-appellee.

Before THORNBERRY, DYER and CLARK, Circuit Judges.

DYER, Circuit Judge:

In this appeal we are called upon to decide, on undisputed evidence, whether a loss suffered by State Bank was covered by its standard form banker's blanket bond issued by Maryland. The District Court found that the bond insured against the loss and entered judgment

for State Bank. We disagree and reverse.

The facts are uncomplicated. Behring and Behring, a partnership composed of Arthur H. Behring and Melvin A. Behring, owned and operated San Marcos Compress, a licensed and bonded warehouse, located in San Marcos, Texas. As bales of cotton were received at the warehouse for storage, warehouse receipts, in bearer form, were issued by the Compress. When bales of cotton were removed from the warehouse, Texas law required the surrender of the receipts to and their cancellation by the Compress.

Contrary to law, Melvin Behring apparently ordered the employees at the Compress not to cancel the warehouse receipts held by the partnership when the bales of cotton that they represented were sold and shipped out of the Compress. A large number of receipts, including the seven hundred receipts here involved, were purchased by the Behring partnership.

Melvin Behring negotiated a loan with State Bank. He told the president that the partnership would give the Bank seven hundred bales of cotton as security. Before the loan by State Bank to the partnership was made, six hundred and ninety-six of the seven hundred bales of cotton were sold for $69,914.64 without cancellation of the warehouse receipts here in suit. Ultimately the Bank loaned $50,000.00 to the partnership. The debt was evidenced by a partnership promissory note in that amount which was secured by a security agreement—pledge of the partnership under which it pledged seven hundred bales of cotton represented by negotiable warehouse receipts in bearer form issued by the Compress.

In making the loan the Bank did not rely upon the financial statements furnished by the partnership but relied solely upon the security of the warehouse receipts, believing that the partnership owned seven hundred bales of cotton purportedly covered by the warehouse receipts which cotton should have been in the Compress. The Bank would not have issued its check to the partnership if it had known that in fact the cotton was not in the Compress as represented.

When the Bank received information that substantially all of the cotton represented by the warehouse receipts held by it had been sold to others and had been shipped out of the warehouse, it made demand on the partnership for payment of the note. The partnership defaulted and it was subsequently adjudicated a bankrupt.

Melvin Behring was charged with theft of the $50,000 from the Bank's president. He pleaded guilty to theft by false pretenses and was adjudged guilty of that offense by the District Court of Hays County, Texas.

Maryland brought this action seeking a declaratory judgment that there was no liability under its bond for the Bank's loss. The Bank answered and counterclaimed seeking recovery of its $50,000 loss.

The Bank relies upon Clause B of the bond which provides, in pertinent part, that Maryland agrees to indemnify the Bank against:

Any loss of property through robbery, burglary, common-law or statutory larceny, theft, false pretenses, hold-up, misplacement, mysterious unexplainable disappearance * * *.

Maryland, on the other hand, relies upon a loan exclusion clause in the bond which excludes from coverage:

(d) Any loss the result of the complete or partial non-payment of or default upon any loan made by or obtained from the Insured, whether procured in good faith or through trick, artifice, fraud or false pretenses, except when covered by Insuring Clause (A), (1) or (E).

The crux of this appeal is the correct interpretation of these clauses and Insuring Clause (E) which we discuss *infra*.

The District Court concluded that "the transaction cannot be called a loan with-

in the language of the exclusion clause" because "Behring knew * * * not only that the warehouse receipts were valueless but also that he never intended to repay the money. He wanted to steal the money, not to obtain a loan, and he simply used the mechanics of the loan procedure to effect the theft. With Behring having such an intent, the transaction cannot be called a loan within the language of the exclusion clause. There being no loan, there is no exclusion." The Court then held that since the loss was the result of theft it was covered under Clause B of the bond.

For the reasons that we will delineate, we are convinced that the District Court's interpretation of the loan exclusion clause is erroneous. No authority to support its conclusion that the clause was inapplicable was mentioned in the trial judge's memorandum opinion. Bank's counsel has been unable to authoritatively support the judgment. And we have, after considerable search, turned up nothing that has the slightest persuasiveness that the exclusionary clause of the bond can be nullified by the subjective fraudulent intent of the borrower, notwithstanding that the objective indicia all point one way—that a loan was made by the Bank to the partnership.

> The district court's finding on this ultimate issue, * * * is not to be garrisoned by the clearly erroneous rule. Though it has factual underpinnings this ultimate issue is inherently a question of law. Obeisance to the clearly erroneous rule must yield when the facts are undisputed and we are called upon to reason and interpret. This is the law obligation of the court as distinguished from its fact finding duties. United States v. Winthrop, 5 Cir.1969, 417 F.2d 905, 910.

In Community Federal Savings & Loan Association of Overland v. General Casualty Co., 8 Cir.1960, 274 F.2d 620, which we recently cited with approval in East Gadsden Bank v. United States Fidelity and Guaranty Co., 5 Cir.1969, 415 F.2d 357, the borrower furnished the lender with false affidavits to the effect that buildings had been completed on various lots that were taken as security for a loan made by the lender. Upon subsequent default by the borrower, the lender sued on its bond which excluded "any loss the result of the complete or partial non-payment of or default upon any loan made by or obtained from the Insured, whether procured in good faith or through trick, artifice, fraud or dishonesty * * *". In finding that the loan exclusionary clause applied, the court said:

> Plaintiff insists that its loss is not the result of a complete or partial non-payment of or default in any loan made or obtained by it. Plaintiff argues that if the statements as to the payment of lien claims had been true, completion of the buildings and the no loss would have been suffered; hence, the fraud was the cause of the loss. The same type of claim could doubtless be made in almost any type of loan induced by fraud. It is undisputed that loans were made which remain unpaid in part. While the loan was induced by fraud, it seems clear that the immediate cause of the loss was the nonpayment of the loans. It is entirely clear from the exclusion provision as written that the exclusion extends to losses on loans induced by fraud.

274 F.2d at 624, 625.

■ We are unpersuaded by State Bank's argument that *Community Federal* can be distinguished because fraud was there involved, while here there was a theft. As we pointed out earlier, we are not bound by the conclusionary characterization of "theft" based upon the borrower's subjective intent that the District Court ascribed to the transaction. We perceive no basic difference in the case *sub judice* and *Community Federal*. In this case the promissory note was accepted by the Bank as the legal liability of the partnership. Upon that evidence of indebtedness, secured by the

warehouse receipts, the Bank made its loan. It is uncontradicted "that the basic transaction was a loan," that it remained unpaid, and that the default was the "immediate cause" of the loss. *East Gadsden, supra,* 415 F.2d at 360. The transaction thus fell squarely within the terms of the loan exclusion clause. *See,* First National Bank of Memphis v. Aetna Casualty & Surety Co., 6 Cir.1962, 309 F.2d 702, cert. denied, 372 U.S. 953, 83 S.Ct. 951, 9 L.Ed.2d 977 (1963).

The Bank next presses its argument that the clause in question is ambiguous and should be construed against the insurer because "a distinction is intended between a loan procured through a crime, such as theft, and a loan which, though wrongfully procured, was obtained under such circumstances as to create only a civil liability and not a criminal liability." We are unable to accept this periphrastic proposition. The District Court did not rest its decision on the premise here urged by the Bank. It found that there was no loan but that "the mechanics of the loan procedure" were used "to effect a theft." The distinction of criminal vis-a-vis civil liability sought to be drawn by the Bank as the benchmark of coverage vel non has support in neither the language of the loan exclusion clause nor in precedent.

■ In Texas whether an ambiguity exists in the language of an exclusionary clause is a question of law. If the language "is clear and unambiguous, such meaning must be given to the language as will carry out and effectuate the intention of the parties. In that event, rules of construction, such as adopting that construction most favorable to the insured, are not to be applied." St. Paul Mercury Insurance Company v. Price, 5 Cir.1966, 359 F.2d 74, 76. We find the language here under consideration to be "clear and unambiguous." *East Gadsden, supra; Community Federal, supra;* Depositors Trust Co. v. Maryland Casualty Co., 1961, 157 Me. 493, 174 A.2d 288. It appears plain to us that a person subjectively intending to use an objectively bona fide loan transaction as a means of getting money from a bank with no intention of repayment does not procure a loan through theft.

State Bank next argues that if its loss is not recoverable under Clause (B) because it is within the provisions of the loan exclusion clause, it nevertheless is entitled to recover $40,000, the limit of liability under Clause (E).

■ The District Court had no occasion to reach the question of coverage under Clause (E) and consequently did not do so. The case was submitted to the District Court on stipulated facts, and since the parties have fully briefed and argued the Clause (E) coverage question, "we can see no useful purpose that could be served in remanding for further consideration." Brooks v. Commissioner of Internal Revenue, 5 Cir. 1970, 424 F.2d 116, 119; *accord,* Dandridge v. Williams, 1970, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491; Langnes v. Green, 1931, 282 U.S. 531, 51 S.Ct. 243, 75 L.Ed. 520. "[T]he appellee may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court or an insistence upon matter overlooked or ignored by it." United States v. American Ry. Exp. Co., 1924, 265 U.S. 425, 435, 44 S.Ct. 560, 564, 68 L.Ed. 1087.

Accordingly, we proceed to a consideration of that clause. It provides:

(E) Any loss through the Insured's having, in good faith and in the course of business, whether for its own account or for the account of others, in any representative, fiduciary, agency or any other capacity, either gratuitously or otherwise, purchased or otherwise acquired, accepted or received, or sold or delivered, or given any value, extended any credit or assumed any liability, on the faith of, or otherwise acted upon any securities, documents or other written instruments which prove to have been counterfeited or forged as to the signature

of any maker, drawer, issuer, endorser, assignor, lessee, transfer agent or registrar, acceptor, surety or guarantor or as to the signature of any person signing in any other capacity, or raised or otherwise altered or lost or stolen * * *.

State Bank concedes that the warehouse receipts were not *forged* but it insists that they were *counterfeited* or *stolen* securities within the meaning and intent of Clause (E). It is uncontroverted that all of the warehouse receipts were genuine, bona fide, valid and valuable at the time each of them was originally issued and that they were worthless at the time they were pledged by the partnership to the Bank.

We have no citation of any Texas authority which is helpful on the question of what may be considered "counterfeit" within the meaning of Clause (E). State Bank relies on United Pacific Insurance Company v. Idaho First National Bank, 9 Cir.1967, 378 F.2d 62, which adopted the reasoning of Fidelity Trust Company v. American Surety Company of New York, 3 Cir.1959, 268 F.2d 805. In *Fidelity* the court held Clause (E) applicable because "[C]ommon usage would indicate that counterfeit is something that purports to be something that it is not. And that is just what these spurious invoices were. They looked all right even as to details but they were not what they seemed to be." *Id.* at 807.

The majority of courts faced with this problem have held, however, upon various theories, that invoices and accounts receivable similar to the warehouse receipts here involved, cannot be considered "counterfeit" within the meaning of Insuring Clause (E). *See generally* Capitol Bank of Chicago v. Fidelity and Casualty Co. of N. Y., 7 Cir.1969, 414 F.

2d 986; First Nat. Bank & Trust Co. of Oklahoma City v. United States Fidelity & Guaranty Co., 10 Cir.1965, 347 F.2d 945; Exchange Nat. Bank of Olean v. Insurance Co. of No. Amer., 2 Cir.1965, 341 F.2d 673, cert. denied, 382 U.S. 816, 86 S.Ct. 37, 15 L.Ed.2d 63; North Carolina National Bank v. United States Casualty Co., 4 Cir.1963, 317 F.2d 304, cert. denied, 375 U.S. 905, 84 S.Ct. 193, 11 L.Ed.2d 144; First Nat. Bank of Memphis v. Aetna Casualty & Surety Co., 6 Cir. 1962, 309 F.2d 702, cert. denied, 372 U.S. 953, 83 S.Ct. 951, 9 L.Ed.2d 977; First National Bank of South Carolina of Columbia v. Glens Falls Ins. Co., 4 Cir.1962, 304 F.2d 866.[1]

We align ourselves with the majority rule and adopt the reasoning of the Second Circuit in *Exchange Nat. Bank, supra:*

A document or writing is counterfeit if it is an imitation, if it attempts to simulate another document or writing which is authentic. The deceptive and fraudulent quality of these invoices, however, arose, not from the effort to imitate or simulate authentic invoices, but from falsity of the implicit and explicit representations of fact, to wit, that certain goods had already been shipped to a customer. To hold that these invoices are counterfeit would obliterate elementary distinctions among the techniques of deception. These distinctions are recognized in ordinary and commercial usage and they are preserved in the bond. Not all defaulting loans obtained upon the basis of fraud and deception are covered. In fact, the bond generally excludes from coverage losses resulting from default on loans, regardless of whether the loan was procured through trick, artifice, fraud or false pretenses; the limitation on this ex-

---

1. State cases following the majority view include: State Bank of Kenmore v. Hanover Insurance Company, 1965, 49 Misc.2d 341, 267 N.Y.S.2d 672, aff'd, 25 A.D. 2d 618, 269 N.Y.S.2d 388; Union Banking Co. v. United States Fidelity & Guaranty Co., 1965, 4 Ohio App.2d 397, 213 N.E.2d 191; First Am. State Bank v. Aetna Cas. & Sur. Co., 1964, 25 Wis.2d 190, 130 N.W.2d 824; United States Fid. & Guar. Co. v. First Nat'l Bank of Ft. Morgan, 1961, 147 Colo. 446, 364 P.2d 202.

clusion for loans fraudulently obtained through the use of counterfeit documents merely appears as an exception to the general exclusion. There is a difference between extending credit on the basis of pledged counterfeit stock certificates, a risk clearly within the purview of the bond, and extending credit on the basis of invoices that cover non-existent shipments and that have been submitted as evidence of previously pledged accounts receivable. The bank could verify the existence of the pledged accounts receivable by inquiring with the loan applicant's purported customer, while detecting a counterfeit security is likely to pose significantly different and more serious risks to the bank.

341 F.2d at 676.

We summarily dispose of State Bank's contention that there is coverage under Clause (E) because the warehouse receipts were "stolen" when they were delivered to the bank. Bank concedes that this contention lacks the underpinning of any authority. We think the contention is frivolous.

Concluding, as we do, that the loan exclusion clause is applicable and that Insuring Clause (E) is inapplicable, we reverse and render judgment for Maryland Casualty Company.

Reversed and rendered.