**PROVIDENT TRUST CO. v. NATIONAL SURETY CORPORATION.**

**No. 8329.**

Circuit Court of Appeals, Third Circuit.

Argued July 13, 1943.

Decided Oct. 7, 1943.

Rehearing Denied Nov. 19, 1943.

George E. Beechwood, of Philadelphia, Pa., for appellant.

Harvey A. Miller, of Pittsburgh, Pa., for appellee.

Before JONES and McLAUGHLIN, Circuit Judges, and KIRKPATRICK, District Judge.

McLAUGHLIN, Circuit Judge.

This appeal involves the construction of a so-called "Bankers' Blanket Bond" issued by the defendant insurance company to the plaintiff bank. In that bond under Section D-5, as amended, coverage was provided for "any loss" "(5) through transferring or paying any money or funds or transferring or delivering any securities or establishing any credit on the faith of forged or altered written instructions or advices from any customer or from any banking institution, not including telegraphic, cable, radio or teletype instructions or advices." Under Section 2(a) the bond specifically did not cover "any loss effected directly or indirectly by means of forgery, except when covered by insuring clause (A) or (D)." Under Section 2(d), the bond did not cover "any loss resulting from any loan made by the Insured or by any of the Employees whether authorized or unauthorized, except when covered by insuring clause (A)." The insuring clause (A) referred to, has to do with loss through any dishonest, fraudulent or criminal act, if any, of the employees, etc. Admittedly there were no such acts involved here.

The plaintiff loaned $15,000 on the security of certain warehouse receipts representing 632 barrels of liquor which had a value of $15,000 or more. It is conceded that there were only 141 barrels of liquor in existence at the time the receipts were given. Those particular barrels were encumbered by prior liens. The borrower went into bankruptcy. The only amount recovered by the bank was $77.62 as its share of the proceeds of the said 141 barrels of liquor. The bank in this case sued the insurance company under the latter's bond, for the balance of its loss. There was a judgment, in favor of the plaintiff bank, from which this appeal is taken. The base of the recovery in the district court was that (a) the false statements in the warehouse receipts constituted forgery under the pertinent Pennsylvania law and (b) said receipts are embraced within the policy language in Section D-5, namely, "written instructions or advices." The defendant company says that by virtue of Section 2(d) of the policy, the transaction

is not within the contract at all. It also maintains that the warehouse receipts are not forgeries under the law of Pennsylvania; and that they are not within the category of "written instructions or advices."

We do not see that the excluding Section 2(d) of the policy so controls, as to of itself eliminate responsibility of the insurance company for the loss in question. The prior 2(a) clause with D(5) as amended, covers "any loss effected directly or indirectly by means of forgery" "through transferring or paying any money * * * on the faith of forged or altered written instructions or advices, etc." To hold that 2(d) destroys the plain substance of 2(a) would render meaningless, the deliberate insertion of 2(a) into the policy. At least, a confusing situation is presented, which has been caused by the scrivener insurance company. This is to be resolved against the company rather than the policy holder.

On the question as to whether the warehouse receipts are to be classed as forgeries; both sides agree that the law of Pennsylvania governs. That law on the point involved is set out in Commonwealth v. Pearlman, 126 Pa.Super. 461, 191 A. 365. The relevant facts of that case are stated in the opinion which reads, 126 Pa.Super. at pages 467, 468, 191 A. at page 368:

"Appellant contends that the charge as quoted above is erroneous because the Act of March 31, 1860, P.L. 382, § 169, 18 P.S. § 3631, applies only to forgeries and not to the making, uttering, or publishing of instruments which contain false statements but not forged signatures. * * * In Biles v. Com., 32 Pa. 529, 75 Am.Dec. 568, it was held that the making of a false entry in a journal by a bookkeeper with intent to defraud his employer was a forgery at common law. The forgery was perpetrated by the false addition of the items of cash from bills receivable on a page of the journal of the firm.

"A year later, the act of 1860, supra, under which appellant was indicted, was enacted. It reads: 'If any person shall fraudulently make, sign, alter, utter or publish, or be concerned in the fraudulent making, signing, altering, uttering or publishing any written instrument, other than notes, bills, checks or drafts already mentioned, to the prejudice of another's right, with intent to defraud any person or body corporate, or shall fraudulently cause or procure the same to be done, he shall be guilty of a misdemeanor, and, on conviction, be sentenced to pay a fine not exceeding one thousand dollars, and to undergo an imprisonment, by separate or solitary confinement at labor, not exceeding ten years.' * * *

"It is pointed out in Purdon's historical note that, 'This section is intended to embrace the large class of forgeries of written instruments, not embraced in the preceding sections, which have special reference to bank-paper, and which are now punished at common law. Report on the Penal Code, 36.' See, also, Com. v. Wilson, 44 Pa.Super. 183, as to the report of the commissioners who reported the code to the legislature. In that case at page 187, it is said: 'Judge Ludlow in Com. v. Cullen, 13 Phila. 442, says: "I happen to be familiar with this section of the criminal code. After Biles' case had been affirmed by the Supreme Court (1859) in 32 Pa. 529, 75 Am.Dec. 568, the commissioners determined to settle the question of what should be forgery in this state, and for that purpose framed sec. 169 of the code. Its provisions are, and were intended to be sweeping." Text-writers and judges agree that as a general rule any writing in such form as to be the means of defrauding another may be the subject of forgery, or of alteration in the nature of forgery. The offense may be committed in respect to any writing; which, if genuine would operate as the foundation of another's liability. If it is calculated to deceive and intended to be used for a fraudulent purpose,—that is sufficient: 13 Am. & Eng. Ency. of Law (2d Ed.) 1093. The offense of uttering a forged instrument consists in offering to another a false instrument which has capacity to injure, with a knowledge of its falsity, and with an intent to defraud: Whart. Crim. Law (11th Ed.), § 703.' "

The court further says at page 469 of 126 Pa.Super., at page 369 of 191 A.:

"It seems, therefore, that by the act of 1860 it was intended to make statutory the common-law rule of the Biles case. * * *

"The rule of the Biles case seems to govern the case at bar. Under that case the charge of the lower court was a proper statement of the law. If this appellant knew that Ethel Warren was a married woman and yet induced her to give bail, knowing that a married woman could not give bail, or if he induced her to make false statements as to assessed value or as to other securities, for which it had been

pledged, then he was concerned in fraudulently making the bond."

Under the above case, the making of the false statements in the warehouse receipts is forgery in Pennsylvania, even though the signatures to the same were not actually forged.

The warehouse receipts directly notified the plaintiff bank that, by virtue of said receipts, the bank held 632 barrels of liquor as collateral security for its $15,-000 loan. Again, if clarification of policy language was needed, the defendant insurance company had only to specifically exclude warehouse receipts from the general "written instruction or advices" when it drafted Section D-5 of the policy. As it stands, that language of Section D-5 is broad enough and vague enough to include within it, the warehouse receipts in question.

The judgment of the district court will be affirmed.