**STATE BANK OF POPLAR BLUFF,**
Appellant,

v.

**MARYLAND CASUALTY COMPANY,**
Appellee.

**No. 16616.**

United States Court of Appeals
Eighth Circuit.

May 3, 1961.

BLACKMUN, Circuit Judge.

This diversity action is one whereby the plaintiff bank seeks to recover from its insurer the amount of a loss claimed to be compensable under a "Bankers Blanket Bond".

There is no real dispute as to the facts: O. M. Spencer, a customer of the bank, was in the used car business. The bank financed Spencer's purchases of automobiles through a "floor plan" arrangement. This involved an advance to Spencer against his execution and delivery to the bank of a demand promissory note and a chattel mortgage on each car concerned and, upon sale of the car, the repayment of the note. Spencer encountered financial difficulties and, by the end of August 1957, over $15,000 was outstanding on his floor plan notes issued to the bank during the preceding 6 months. The bank then discovered that, although Spencer's signatures on the notes and chattel mortgages were genuine and although he may have had possession at one time of some of the described automobiles, others of them were fictitious and he did not in fact own and have possession of any of them at the time of the execution of the respective notes and mortgages. His representations to the bank, when the notes and mortgages were delivered, that he did have such ownership and possession were false. The unpaid Spencer floor plan notes constitute the claim against the insurance company.

The bond in question was issued June 11, 1951, was supplemented by riders effective June 23, 1956, and was in effect when the particular Spencer loans were made in 1957 and the loss sustained. It is Standard Form No. 24. By it the insurance company undertook and agreed to indemnify and hold the bank harmless from certain losses up to a stated amount. The losses covered are described in several clauses but the ones pertinent here are those which have to do with "Forgery or Alteration" (Clause D) and with "Securities" (Clause E). These clauses

H. K. Wangelin, Wangelin & Friedewald, Poplar Bluff, Mo., for appellant.

John S. Marsalek, Moser, Marsalek, Carpenter, Cleary, Jaeckel & Hamilton, St. Louis, Mo., for appellee.

Before VOGEL and BLACKMUN, Circuit Judges, and BECK, District Judge.

are set forth in the margin.[1] The bond by its Section 1(d) specifically excludes from its coverage

"Any loss the result of the complete or partial nonpayment of or default upon any loan made by or obtained from the Insured, whether procured in good faith or through trick, artifice, fraud or false pretenses, except when covered by Insuring Clause * * * (D) or (E)."

The plaintiff in its opening statement at the trial said "that the theory of this law suit is based on forgery and that it is our attempt to broaden the scope of forgery from the mere forgery of signatures to the forgery of an instrument as to the security represented". This is the heart of its case. In support thereof it asserts that the bond is ambiguous to the point of being confusing; that the rule of construction favorable to the insured is applicable here; that the defendant's acts constituted forgery; that counterfeiting is also present for we have a real signature to a false instrument; and that V.A.M.S. § 561.011,[2] relating to the crime of forgery and counterfeiting, lends support.

The defendant takes the position that the bond is clear and unambiguous in its language; that the notes and chattel mortgages bear Spencer's own and genuine signature; that they were not forged or counterfeited within the coverage of the bond; that the loss was the result of the more ordinary risks of day-to-day banking operations, that is, fraud or false pretenses practiced upon the bank; and that this was outside the insuring clauses and within the very language of the quoted exclusion.

The trial was to the court and resulted in a judgment for the defendant. We affirm.

1. The bond was delivered and was to be performed in Missouri. There is no argument here that it is a Missouri contract and that Missouri law governs.

---

1. "(D) Any loss through Forgery or Alteration of, on or in any checks, drafts, acceptances, withdrawal orders or receipts, for the withdrawal or funds or Property, certificates of deposit, letters of credit, warrants, money orders or orders upon public treasuries, or any loss (1) through transferring, paying or delivering any funds or Property or establishing any credit or giving any value on the faith of any written instructions or advices directed to the Insured and authorizing or acknowledging the transfer, payment, delivery or receipt of funds or Property, which instructions or advices purport to have been signed or endorsed by any customer of the Insured or by any banking institution but which instructions or advices either bear the forged signature or endorsement or have been altered without the knowledge and consent of such customer or banking institution, * * * "

"(E) Any loss through the Insured's having, in good faith and in the course of business, * * * purchased or otherwise acquired, accepted or received, or sold or delivered, or given any value, extended any credit or assumed any liability, on the faith of, or otherwise acted upon any securities, documents or other written instruments which prove to have been counterfeited or forged as to the signature of any maker, drawer, issuer, endorser, assignor, lessee, transfer agent or registrar, acceptor, surety or guarantor or as to the signature of any person signing in any other capacity, or raised or otherwise altered or lost or stolen, * * * "

2. "561.011. Forgery, counterfeiting, possession and uttering forged instrument or plates, penalty

"1. It shall be unlawful:

"(1) For any person with the intent to defraud to make or alter any writing of any kind having legal efficacy or commonly relied upon in business or commercial transactions, so that it purports to have been made by another, or at another time, or with different terms, or by authority of one who did not give such authority, or for any person with intent to defraud to totally erase, obliterate or destroy any such instrument; * * *

"(3) For any person with intent to defraud to use as true, or to utter as true, or to possess with intent to utter as true or false, or to transfer with intent that it shall be uttered as true, any writing or other thing which said person knows has been made or altered in the manner described in either of subdivisions (1) or (2); * * * "

See Sturm v. Washington Nat. Ins. Co., 8 Cir., 208 F.2d 97, 98, certiorari denied 347 U.S. 918, 74 S.Ct. 516, 98 L.Ed. 1073.

2. There is also no argument as to the presence of misrepresentations by Spencer, as to the bank's reliance thereon, and as to its incurrence of loss as a result of those misrepresentations. The only question before us is whether the loss is of a kind covered by the bond.

■ 3. Being a diversity case, we are concerned only with whether the trial court's holding that the loss was not covered was a permissible conclusion under Missouri law. Weiby v. Farmers Mutual Automobile Insurance Co., 8 Cir., 273 F.2d 327, 331; Texaco-Cities Service Pipe Line Co. v. Aetna Cas. & S. Co., 8 Cir., 283 F.2d 912, 914, 915, and cases cited.

■ 4. We recognize preliminarily that we have here the common situation where the defendant insurer is to be regarded as the scrivener, and that the insurer, not the insured, has the burden of showing that no liability exists by reason of a policy exclusionary clause. Hartford Accident and Indemnity Company v. Shaw, 8 Cir., 273 F.2d 133, 137; Community Federal Savings & Loan Ass'n of Overland v. General Casualty Co., 8 Cir., 274 F.2d 620, 624; Gennari v. Prudential Insurance Company of America, Mo., 335 S.W.2d 55, 60–1.

5. *Ambiguity.* The bank's argument as to this is primarily general in nature and calls attention to lengthy sentences and detailed punctuation. It does point out, however, the absence of definitions of the bond's terms "Forgery or Alteration" and "counterfeited or forged", even though the bond is a standard form used throughout the country where the "laws [3] of the several states are different".

There is no question that the bond, particularly with its riders, is lengthy, cumbersome, and perhaps complex. The banking business itself, however, is today a complex enterprise and appropriate protective coverage as a consequence requires detailed and seemingly complicated descriptive material. But complexity need not equate with ambiguity.

We have recently had occasion in another Missouri case to note that the Supreme Court in Bergholm v. Peoria Life Ins. Co., 284 U.S. 489, 492, 52 S.Ct. 230, 231, 76 L.Ed. 416, stated that where the terms of an insurance policy are of doubtful meaning, that construction most favorable to the insured will be adopted; that this, however, "furnishes no warrant for avoiding hard consequences by importing into a contract an ambiguity which otherwise would not exist"; and that "contracts of insurance, like other contracts, must be construed according to the terms which the parties have used". Massachusetts Bond. & Ins. Co. v. Julius Seidel Lbr. Co., 8 Cir., 279 F.2d 861, 865. The Supreme Court of Missouri has adopted the same rule, and will not permit "a perversion of language" to create an ambiguity where none exists. Wendorff v. Missouri State Life Ins. Co., 318 Mo. 363, 1 S.W.2d 99, 101–102, 57 A.L.R. 615; Central Surety & Ins. Corp. v. New Amsterdam Cas. Co., 359 Mo. 430, 222 S.W.2d 76, 78; Aetna Life Insurance Co. of Hartford Conn. v. Durwood, Mo., 278 S.W.2d 782, 786.

■ We think that this approach is fully applicable here; that the bond, insofar as the issues presently involved are concerned, is not ambiguous or open to differing constructions; and that it is susceptible of appropriate understanding by an insured bank. We regard its terms as unlike and not comparable to the contract provision involved, for example, in Travelers Indemnity Co. v. Nielson, 8 Cir., 277 F.2d 455, affirming D.C., 174 F.Supp. 648, 662, where ambiguity was found.

■ 6. *Forgery and Counterfeiting.* General definitions tell us that "forgery" means the "act of forging, fabricating, or producing falsely", that the noun "counterfeit" means "that which is made in imitation of something with a view to deceive", and that the

---

3. Meaning thereby, presumably, the crime statutes.

verb "counterfeit" means "to imitate". Webster's New International Dictionary (Second Edition, 1960). The legal definitions place like emphasis, so far as forgery is concerned, upon "false making or material altering" and upon something "falsely made, imitated or forged" and, so far as counterfeiting is concerned, upon copying or imitating. Black's Law Dictionary (Fourth Edition, 1951); 23 Am.Jur., Forgery, § 2; 37 C.J.S. Forgery § 1; 14 Am.Jur., Counterfeiting, § 2; 20 C.J.S. Counterfeiting § 1. All this implies to us falsification and lack of genuineness in the instrument itself rather than in its content.

■ We would think, too, that the cited Missouri crime statute lends little support to the bank's position here. We do not now decide whether a state statute's definition of a crime such as forgery is to be controlling in the determination of the meaning of the same word in a fidelity bond.[4] We note, however, that the only language of § 561.011 which would be helpful to the plaintiff is the phrase in subsection 1(1) "* * * to make or alter any writing * * * so that it purports to have been made * * . * with different terms".[5] The notes and chattel mortgages here involved speak for themselves. They were not made or altered so that they speak "with different terms" from the ones they originally contained. The falsity here lies in the fact, extrinsic to the terms of the instruments, that Spencer did not then own or possess the automobiles.

When we turn to the reported Missouri cases, both civil and criminal (although the latter involve earlier statutes which have been replaced by § 561.011 and others enacted in 1955), we find them almost conclusive upon the question. Phleger v. Phleger, 345 Mo. 512, 134 S.W.2d 26 was an action to set aside a deed as a forgery. The Supreme Court of Missouri said, at page 27:

"There was no forgery. Plaintiff admits signing the deed. In this situation it is a question of whether a mere fraudulent statement of the consideration in a deed is a forgery. The courts are divided on the question. * * * We agree to the majority rule, which is well stated as follows:

" 'Forgery is the fraudulent making or altering of a writing to the prejudice of another's right. The defendant was guilty of the fraud, but not of the making. The paper was made by the other person himself, in prejudice of his own right. * * *' "

In West St. Louis Trust Co. v. American Surety Co., 222 Mo.App. 393, 5 S.W.2d 669, a customer gave the bank his $2,800 note in return for a loan. He also delivered to the bank as collateral security 2 other notes payable to himself and a deed of trust. The signatures to these collateral instruments were forged. In denying the bank recovery against its surety company which had covered a loss on a note which was "forged", the court said, at page 670:

"Plaintiff contends that the note executed by Wootan for $2,800 was a forgery at common law, and therefore within the coverage of the policy. It is manifest, however, that this contention is untenable. The note was not a forgery in any sense. It was in all respects what it purported to be, and there was no deceit or falsity in it, either as to its operation or effect, or as to the signature of the maker."

See also State v. Kinder, 315 Mo. 1314, 290 S.W. 130, 131, 51 A.L.R. 564; State

---

4. Rockland-Atlas National Bank of Boston v. Massachusetts B. & I. Co., 338 Mass. 734, 157 N.E.2d 239, 242, provides an instance where the language of Clause (E) was not claimed to be restricted to the statutory definition of forgery in the particular jurisdiction. We are cognizant also of the existence of V.A.M.S. § 561.-450 which is, in distinction from § 561.-011, the Missouri crime statute having to do with obtaining property by false representation.

5. Subsection 1(3) relates back to 1(1) and necessarily stands or falls with it.

v. Andrews, 297 Mo. 281, 248 S.W. 967, 969; State v. Leonard, 171 Mo. 622, 71 S.W. 1017. These cases set forth Missouri's law with sufficient clarity and positiveness as to convince us that Spencer's acts embraced neither forgery nor counterfeiting within the language of the bond. Compare Metropolitan National Bank of Minneapolis v. National Surety Co., D.C.Minn., 48 F.2d 611; Goucher v. State, 113 Neb. 352, 204 N.W. 967, 41 A.L.R. 227; Pasadena Investment Co. v. Peerless Casualty Co., 132 Cal.App.2d 328, 282 P.2d 124, 125, 52 A.L.R.2d 203; Rockland-Atlas National Bank v. Massachusetts B. & I. Co., supra; Fitzgibbons Boiler Co. v. Employers' L. Assur. Corp., 2 Cir., 105 F.2d 893; United States v. Brown, 2 Cir., 246 F.2d 541; Marteney v. United States, 10 Cir., 216 F.2d 760, 763; 23 Am.Jur., Forgery, § 7, p. 678; 37 C.J.S. Forgery § 5, p. 37; see 41 A.L.R. 229, 231.

There is some apparently opposing authority involving facts at least somewhat similar to those here. Fidelity Trust Co. v. American Surety Co. of New York, 3 Cir., 268 F.2d 805; Provident Trust Co. v. National Surety Corporation, 3 Cir., 138 F.2d 252, certiorari denied 321 U.S. 790, 64 S.Ct. 790, 88 L.Ed. 1080; Security National Bank of Durand v. Fidelity & C. Co. of N. Y., 7 Cir., 246 F.2d 582; see 41 A.L.R. 229, 247. Some of these cases (Fidelity Trust; Security National Bank) involve the same Clause (E) which is now before us. We need only say, as to these cases, (1) that they are representative of a minority view referred to in Phleger, supra, at page 27 of 134 S.W.2d, in Fitzgibbons, supra, at page 896 of 105 F.2d, and in the annotation in 41 A.L.R. 229, 247, and at least one of them so recognizes (Security National Bank at page 586 of 246 F.2d); (2) that they rest on local law or upon what is deemed to be local law; and (3) that none of them involve Missouri law.

We readily conclude that the experienced Missouri federal judge who tried this case neither misconceived nor mis-

applied applicable Missouri law and that he reached a permissible conclusion with respect thereto.

Affirmed.