## CENTRAL BANK & TRUST CO. v. FIDELITY & DEPOSIT CO. OF MARYLAND, et al.

No. 63-L-2406.

Circuit Court, Dade County.

May 29, 1964.

Pallot, Marks, Lundeen, Poppell & Horwich, Miami, for plaintiff.

Dixon, DeJarnette, Bradford, Williams, McKay & Kimbrell, Miami, for defendant Fidelity & Deposit Co. of Maryland.

Garber & Chadroff, Miami, for defendants John Owen and Florida Auto Lease, Inc.

HAROLD B. SPAET, Circuit Judge.

This cause was submitted on the stipulated facts hereinafter set forth. Both sides moved for summary judgment, and stipulated that there was no controversy as to any material fact. The stipulated facts were as follows —

> That on or about the 1st day of April, 1963, Florida Auto Lease, Inc., in the person of its president, John Owen, approached the Central Bank and Trust Company, hereinafter referred to as the Bank, for the purpose of borrowing a sum of money from the Bank on a 1963 Cadillac automobile. At that time, Mr. Owen had in his possession a motor vehicle certificate of title issued by the motor vehicle commissioner of the state of Florida,

which showed the registered owner of the Cadillac to be Florida Auto *Leasing,* Inc. and the Bank as first lien holder. The Bank advised Florida Auto Lease, Inc. that the title certificate did not reflect the registered owner's proper name.

Thereafter, on or about the 11th day of April, 1963, John Owen returned to the Bank, at which time he had in his possession a motor vehicle certificate of title showing the registered owner to be Florida Auto Lease, Inc.; the first lien holder, Central Bank and Trust Company; and the second lien holder, Sam I. Silver; a copy of which certificate is attached hereto as exhibit A.

On the 11th day of April, 1963, John Owen, as president of Florida Auto Lease, Inc., executed and delivered to the Bank a chattel mortgage and promissory note encumbering the said Cadillac in the sum of $5,897.88; a copy of which is attached hereto as exhibit B. The Bank thereupon issued its check in the amount of $5,000 to Florida Auto Lease, Inc., which sum represented the net amount of the loan to Florida Auto Lease, Inc. The Bank then delivered the certificate of title and the note and mortgage to Baumgardner Auto Tag Agency, which agency thereafter caused the title certificate to be registered with the motor vehicle commissioner of the state of Florida.

In payment for the Cadillac automobile, John Owen delivered to Jim Rathmann Chevrolet-Cadillac, Inc. a check drawn on the Coconut Grove Bank on the account of the Octagon Corporation; a copy of which check is attached hereto as exhibit C. This check did not clear and has never been made good. Jim Rathmann Chevrolet-Cadillac, Inc. has not been paid for the said Cadillac by Florida Auto Lease, Inc. or anyone on its behalf.

Thereafter, Jim Rathmann Chevrolet-Cadillac, Inc. filed a replevin action against Florida Auto Lease, Inc. and Sam I. Silver, who had leased the car from Florida Auto Lease, Inc. The Bank became a party to this action and a judgment was entered whereby the Cadillac was returned to Jim Rathmann Chevrolet-Cadillac, Inc. The defendant, Fidelity and Deposit Company of Maryland, was not a party to this action and this judgment is not binding upon Fidelity and Deposit Company of Maryland.

All of the instruments above referred to are genuine instruments.

The clause in the "banker's blanket bond" on which plaintiff bank grounds its claim, reads as follows —

(E)  Any loss through the insured's having, in good faith and in the course of business, whether for its own account or for the account of others, in any representative, fiduciary, agency or any other capacity, either gratuitously or otherwise, purchased or otherwise acquired, accepted or received, or sold or delivered, or given any value, extended any credit or assumed any liability, on the faith of, or otherwise acted upon any securities, documents or other written instruments which prove to have been counterfeited or forged as to the signature of any maker, drawer, issuer, endorser, assignor, lessee, transfer agent or registrar, acceptor, surety or guarantor or as to the signature of any person signing in any other capacity, or raised or otherwise altered or lost or stolen, or through the insured's having, in good faith and in the course of business, guaranteed in writing or witnessed any signatures, whether for valuable consideration or not and whether or not such guaranteeing or witnessing is ultra vires the insured, upon any transfers, assignments, bills of sale, powers of

attorney, guarantees, endorsements or other documents upon or in connection with any securities, obligations or other written instruments and which pass or purport to pass title to such securities, obligations or other written instruments; EXCLUDING, HOWEVER, any loss through FORGERY OR ALTERATION of, on or in any checks, drafts, acceptances, withdrawal orders or receipts for the withdrawal of funds or property, certificates of deposit, letters of credit, warrants, money orders or orders upon public treasuries; and excluding, further, any loss specified in subdivisions (1) and (2) of Insuring Clause (D) as printed in this bond, whether or not any amount of insurance is applicable under this bond to Insuring Clause (D).

Mechanically reproduced facsimile signatures are treated the same as handwritten signatures.

There are two lines of authority on the question of the insuror's liability on a clause such as above set forth. One, represented by North Carolina National Bank v. United States Casualty Co., 317 F. 2d 309, First National Bank of Memphis v. Aetna Casualty & Surety Co., 309 F. 2d 702, First National Bank of South Carolina v. Glens Falls Ins. Co., 304 F. 2d 866, and many, many more hold that instruments fraudulently executed or containing false statements, but otherwise genuine are *not* within the protection of the language of a blanket bond as above described; the other line of authority represented by Provident Trust Co. v. National Surety Corporation, 138 F. 2d 252, Security National Bank of Durand v. Fidelity & Casualty Co. of N. Y., 246 F. 2d 582, Quick Service Box Co. v. St. Paul Mercury Indemnity Co., 95 F. 2d 15, and many more hold that liability can arise when there has been a *real* signature to a *false* instrument or a *false* signature to a *true* instrument.

In my opinion, the latter holdings, although in the minority, are based on better reasoning and should be followed in this state (no cases in point, in Florida, were found despite exhaustive research by able counsel, supplemented by that of court) when such a case is presented.

However, the plaintiff's claim does not fall under the rulings in either line of authority. The motor vehicle certificate of title issued by the state of Florida on the Cadillac was in all respects legal and genuine. The fraud of John Owen, or Florida Auto Lease, Inc., was *dehors* the legal instrument. For that reason plaintiff is not in the position of the bank in Provident Trust Co., supra, or in Security National Bank of Durand, supra. The only fraud that at all touches on the certificate of title was the fraud practiced by John Owen on the vendor of the automobile, Jim Rathmann Chevrolet-Cadillac, Inc., antecedent to the issuance of the certificate of title issued by the motor vehicle commissioner. That derivative fraud was not a risk covered by the defendant's blanket bond, in my opinion.

Therefore summary judgment will be entered in favor of the defendant and against the plaintiff, and the motion of the plaintiff for similar relief will be denied. Submit order.