**WHITNEY NATIONAL BANK OF NEW ORLEANS, Appellant,**

v.

**TRANSAMERICA INSURANCE COMPANY, et al.**

No. 71-1987.

United States Court of Appeals, Third Circuit.

Argued Oct. 3, 1972.

Submitted En Banc Dec. 13, 1972.

Decided March 14, 1973.

John J. Monigan, Stryker, Tams & Dill, Newark, N. J., William T. Sutphin, Princeton, N. J., for appellant.

Charles H. Hoens, Jr., Lum, Biunno & Tompkins, Newark, N. J., for appellees.

Before SEITZ, Chief Judge, and KALODNER, HASTIE, VAN DUSEN, ALDISERT, ADAMS, and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

HASTIE, Circuit Judge.

A national banking corporation, domiciled and doing business in Louisiana, filed this action for breach of contract against a group of insurance companies, severally incorporated in states other than Louisiana, that had joined in insuring the bank against certain risks. Invoking diversity jurisdiction, the Louisiana plaintiff elected to sue in the District Court for the District of New Jersey.

The contract in question is a standard "Bankers Blanket Bond". The bank suffered the loss in suit when a borrower defaulted and warehouse receipts that the bank had accepted as security for the loan proved to be worthless or, at best, worth only a small fraction of their apparent value. Whether the bond insures against this loss depends essentially upon the interpretation of a clause in the bond that protects the insured against loss through extending credit "on the faith of . . . any written instruments which prove to have been counterfeited . . . ." [1]

Holding that the warehouse receipts were not "counterfeited", the district court denied recovery. When this appeal from that decision was argued to a panel of this court question arose about the correctness of an earlier relevant, and perhaps controlling, decision of this court.[2] Accordingly, this appeal has been submitted to the court en banc for decision.

This dispute arises out of secured loans aggregating more than $3,400,000 that the plaintiff bank made to Allied Crude Vegetable Oil Refining Corp. in September, 1962. As collateral the bank accepted documents which on their face were duly executed non-negotiable warehouse receipts of warehousing and tank storage companies that were wholly owned subsidiaries of American Express Co. Subsequently, new warehouse receipts were substituted for those originally deposited. Each of the warehouse receipts showed on its face that a specified large quantity of crude soybean oil was stored and being held at a specified place by the issuing warehousing company. However, after the borrower defaulted it was discovered that at the time the warehouse receipts were issued

---

1. The then standard bond did not define "counterfeited". We are told that "counterfeited" is defined in the form of bond now used.

2. Fidelity Trust Co. v. American Surety Co., 3d Cir. 1959, 268 F.2d 805.

the oil actually in the warehousing company's field storage tanks was at most a small fraction of the amount shown in the warehouse records upon which the pledged warehouse receipts had been based.

The warehousing companies administered tank farms with capacity for storage of hundreds of million pounds of oil. During a normal week millions of gallons of oil would be accepted for storage and pumped into the field tanks and millions of gallons would be claimed by holders of warehouse receipts and pumped out for delivery to them. No particular oil was segregated and held for a particular bailor. Rather, the responsibility of the bailee was to hold in its custody at all times a total quantity of oil equal to the aggregate quantities shown on outstanding warehouse receipts. The wrongdoing in this case involved repeated incorrect measurements and false reports of the amounts of oil in storage. Apparently this gigantic swindle was contrived by the bailor, Allied Crude Vegetable Oil Refining Corp., with the witting or unwitting assistance of employees of the warehousing bailee. The district court made no finding as to details of the scheme.

As has been stated, the bond in suit insured the bank against losses suffered by reliance upon instruments "which prove to have been counterfeited . . . ." The bond also contained general language excluding from its coverage losses resulting from fraud, except as otherwise specifically provided. All parties recognize that the loss in suit resulted from a gross fraud. However, if the warehouse receipts upon which the bank relied were, as the bank contends, "counterfeited" within

the meaning of the bond, the insurer is liable.

The parties agree that in this diversity case the interpretation of the contract of insurance is governed by Louisiana law. But neither the research of the parties nor our own has disclosed anything in the Louisiana statutes or decisions that provides decisive guidance to the interpretation of "counterfeited" in the present context.

In Fidelity Trust Co. v. American Surety Co.,[3] interpreting the same language of a standard bankers bond in a case governed by Pennsylvania law, this court concluded that "counterfeited" did cover certain assignments of accounts receivable. Each account was evidenced by a duplicate invoice, duly executed on the borrower's regular billing form and unexceptional on its face. However, some of these invoices were fraudulent in that they represented purported sales that in fact had not taken place.

In that case we found nothing in Pennsylvania law that would guide us in the interpretation of the bankers bond. Thus our problem of interpreting the bond was essentially like the one that confronts us now. We held that, where no sale had in fact been made, a duly executed invoice for a fictitious transaction was "counterfeited".

However, almost all of the courts that have had occasion to interpret the standard bankers bond since that time have reached a contrary result. These cases decide that "counterfeited" connotes spurious or imitative execution of a document as distinguished from the document's explicit or implicit misrepresentation of facts other than the genuineness of execution.[4]

3. Supra note 2.

4. Maryland Casualty Co. v. State Bank & Trust Co., 5th Cir. 1970, 425 F.2d 979 (warehouse receipts) ; First National Bank of Memphis v. Aetna Casualty & Surety Co., 6th Cir. 1962, 309 F.2d 702 (warehouse receipts) ; Exchange National Bank of Olean v. Insurance Co. of North America, 2d Cir. 1965, 341 F.2d 673 (invoices) ; North Carolina National Bank v. United States Casualty Co., 4th Cir. 1963, 317 F.2d 304 (invoices) ; Capitol Bank of Chicago v. Fidelity and Casualty Co. of N. Y., 7th Cir. 1969, 414 F.2d 986 (accounts receivable) ; State Bank of Poplar Bluff v. Maryland Casualty Co., 8th Cir. 1961, 289 F.2d 544 (chattel mortgages). But cf. United Pacific Ins. Co. v. Idaho First National Bank, 9th Cir. 1967, 378 F.2d 62 (cashier's check).

The cited cases constitute impressive authority contrary to our earlier decision. We are persuaded that they are soundly reasoned. Accordingly, we no longer will follow Fidelity Trust Co. v. American Surety Co.

The judgment will be affirmed.