**BANK of the SOUTHWEST, Plaintiff-Appellant,**

v.

**NATIONAL SURETY COMPANY, Defendant-Appellee.**

No. 72-1858.

United States Court of Appeals, Fifth Circuit.

April 6, 1973.

---

Edwin L. Davis, Dallas, Tex., for plaintiff-appellant.

James A. Knox, Charles J. McGuire, Dallas, Tex., for defendant-appellee.

Before GEWIN, SIMPSON and RONEY, Circuit Judges.

RONEY, Circuit Judge:

Plaintiff Bank seeks recovery under a Bankers Blanket Bond for losses sustained on three collateral loan transactions. The Court ruled as a matter of law that none of the collateral pledged for the loans was forged, counterfeit, or stolen within the Bond's meaning and that the coverage for loss of money through false pretenses did not apply to these loan transactions. The Court granted the defendant bonding company summary judgment as to one loan and judgment notwithstanding a jury verdict as to the other two. We affirm.

The facts are undisputed. In November and December, 1969, Lou Levine represented himself as a wholesale automobile dealer and received from the Bank the following loans, with the alleged security and instruments noted:

| Amount of Loan | Alleged Security | Instrument Surrendered |
|---|---|---|
| $7,000 | 1970 Cadillac | Tax Collector's Receipt for Title Application ("white slip") |
| $6,000 | 1969 Continental | 1. License Receipt<br>2. Certificate of Title<br>3. Application for Corrected Texas Certificate of Title |
| $24,000 | 1,000 shares of Resalab, Inc. | 1. Goodbody & Co. Confirmation Slip<br>2. Trust Receipt<br>3. Collateral Pledge<br>4. Assignment and Power of Attorney |

Shortly after the loans were made, plaintiff discovered that these instruments did not give it any rights to the alleged security. Levine never delivered the stock to the Bank as agreed, but converted it to his own use. When the loans were not paid, the Bank suffered losses in the amount of $37,000.

Plaintiff had obtained from National Surety Corporation a standard Bankers Blanket Bond for indemnification against certain losses. National Surety, alleging that the Bank's losses were not covered by the Bond, refused indemnification. Plaintiff argues that indemnification was required under Insuring Agreements B, C, and E. Coverage B generally covers loss of property from bank premises through robbery, burglary, theft and false pretenses. Coverage C covers loss of property through robbery, larceny, theft, or otherwise while it is in transit in custody of any person acting as a messenger. Coverage E cov-

ers losses by any securities, documents or other written instruments counterfeited or forged as to signature or stolen.

■ Contrary to plaintiff's contention that Agreement B provides indemnification for all of the losses because the money was obtained from the Bank on false pretenses, the District Court correctly held that such coverage was made inapplicable by the "loan exclusion clause." This clause specifically excludes from indemnification under Coverage B any

(e) loss resulting from the complete or partial non-payment of, or default upon,

(1) any loan or transaction in the nature of, or amounting to, a loan made by or obtained from the Insured . . . whether procured in good faith or through trick, artifice, fraud or false pretenses unless such loss is covered under Insuring Agreements (A), (D), or (E).

Since the money was obtained from the Bank in the form of loans, Insuring Agreement B is inapplicable even if the loans were obtained under false pretenses. Maryland Casualty Co. v. State Bank & Trust Co., 425 F.2d 979 (5th Cir. 1970); East Gadsden Bank v. United States Fidelity & Guaranty Co., 415 F.2d 357 (5th Cir. 1969).

■ The contention that Insuring Agreement C covers the loss from the $24,000 loan against Resalab stock is without merit. The theory that Levine was acting as the Bank's "messenger" within the meaning of Coverage C lacks any support in the facts. There is no evidence that the stock was in transit to the Bank when Levine converted it to his own use. In any event, had Levine delivered the stock, he would have been acting on his own behalf, not as a messenger within the meaning of this provision of the Bond.

■ The provision of Insuring Agreement E insuring against losses by written instruments "forged as to signa-tures" does not cover the "white slip" delivered to the Bank on the Cadillac loan. We have previously held that, to come within the forgery protection of Coverage E, it is essential that the document have a "non-genuine signature." *See* American National Bank & Trust Co. of South Pasadena v. Fidelity & Casualty Co. of New York, 431 F.2d 920 (5th Cir. 1970). The "white slip" contained no actual or facsimile signature, and the typed name of an official served not as a signature, but as an identification of the Dallas Tax Assessor/Collector.

As to the claim that the instruments delivered to the Bank on the Continental and Cadillac loans were "counterfeit" or "stolen," under Coverage E of the Bond, the District Court first submitted this issue to a jury. After the jury found on special interrogatories that such instruments were counterfeit and stolen, however, the Court entered a judgment for defendant notwithstanding the verdict. On the undisputed facts, we think the Court correctly determined that the instruments were neither counterfeit nor stolen within the meaning of Coverage E.

"Counterfeit" is specifically defined in the subject Bond:

The word "counterfeited" as used in this Insuring Agreement shall be deemed to mean *only* an imitation of a security document or other written instrument . . . which is intended to deceive and to be taken for an original.

The courts have often accepted this definition and held that there must be or must have been original instrument that the alleged counterfeit document attempts to imitate. Capitol Bank of Chicago v. Fidelity & Casualty Co. of N. Y., 414 F.2d 986 (7th Cir. 1969); Exchange Nat'l Bank of Olean v. Ins. Co. of North America, 341 F.2d 673 (2d Cir. 1965), cert. denied, 382 U.S. 816, 86 S.Ct. 37, 15 L.Ed.2d 63; State Bank of Poplar Bluff v. Maryland Cas. Co., 289 F.2d 544 (8th Cir. 1961).

To recover for a loss on any documents which are "stolen," within the meaning of Coverage E of the Bond, the Bank must be in a situation where it could be required to give up the allegedly stolen document to the rightful owner. *See* Maryland Casualty, *supra*.

*$7,000 Cadillac Loan.* The alleged security for this loan was the 1970 Cadillac, and the instrument surrendered was a Tax Collector's Receipt for Title Application No. V–460376 ("white slip"). It was stipulated that the genuine Application No. V–460376 had been issued not to Levine, but to Arturo Rodriguez, and described not a 1970 Cadillac, but a 1969 Mercury. Thus, the "white slip" held by plaintiff was not an imitation of an authentic original document and was not "counterfeit" within the coverage of Insuring Agreement E. Nor was there any evidence at trial that Levine stole the "white slip." In any event, since it did not have to be returned to a true owner, this document was not "stolen" within the Agreement's meaning.

*$6,000 Continental Loan.* The alleged security for this loan was the 1969 Lincoln Continental, and the instruments surrendered were a License Receipt No. RRP–971, a Certificate of Title No. 51492028, and a related Application for Corrected Texas Certificate of Title. Levine had previously sold this automobile and delivered his original title certificate to the purchaser. He then obtained the Title Certificate given to the Bank by falsely swearing to the Texas Highway Department that he had lost his original copy. Both the License Receipt and the Title Certificate were authentic, albeit the product of fraudulent misrepresentations to the State authorities. Thus, neither could have been "counterfeit."

Neither can any loss suffered from the Continental loan be covered by application of Insuring Agreement E's provisions for stolen documents. The procurement of the License Receipt and Title Certificate by fraud do not render them "stolen" since they do not have to be returned to a true owner. Such instances were specifically excluded from coverage in the Bond's provisions for loans procured by "trick, artifice, fraud or false pretenses." In Union Banking Co. v. United States Fidelity & Guaranty Co., 4 Ohio App.2d 397, 213 N.E.2d 191 (Ohio App.1965), a virtually identical scheme and identical standard Bond were considered, and the Ohio Court held that, as a matter of law, there was no coverage under Insuring Agreement E.

Affirmed.